Rodger WYLEY, #3253, Appellant,

v.

WARDEN, MARYLAND PENITEN-
TIARY, Appellee.

No. 10710.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 31, 1966.

Decided Jan. 10, 1967.

743

Mathias J. DeVito, Baltimore, Md., (Court-assigned counsel) for appellant.

Carville M. Downes, Special Asst. Atty. Gen. of Maryland (Thomas B. Finan,

Atty. Gen. of Maryland, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and CRAVEN, Circuit Judges.

SOBELOFF, Circuit Judge:

This appeal by a state prisoner attacks on federal constitutional grounds Article XV, section 5 of the Constitution of Maryland which leaves to the jury the final determination of the law as well as the facts in a criminal trial. The provision reads as follows:

> In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction.

On November 19, 1953 a jury in the Criminal Court of Baltimore found Rodger Wyley guilty of first degree murder, without capital punishment, and he was thereupon sentenced to prison for life. Wyley's petition for a writ of federal habeas corpus attacked his conviction on a number of grounds, but the only one which concerns us on this appeal is whether the trial judge's instruction to the jury, given in accordance with Article XV, section 5, denied defendant due process and equal protection of the laws in violation of the Fourteenth Amendment.[1] While acknowledging "the force of many of the arguments made by counsel for the petitioner," the District Court dismissed the petition on the basis of

1. The trial judge, at the conclusion of all the evidence, gave the jury advisory instructions on the law, which he prefaced with the following remarks:

Members of the Jury, this is a criminal case and under the Constitution and the laws of the State of Maryland in a criminal case the jury are the judges of the law as well as of the facts in the case. So that whatever I tell you about the law while it is intended to be helpful to you in reaching a just and proper verdict in the case, it is not binding upon you as members of the jury and you may accept or reject it. And you may apply the law as you apprehend it to be in the case.

The question raised by the defendant's petition was not raised at the trial. Since the state has made no issue of this, presumably it concedes that the defendant's failure to object was not for strategic or tactical reasons, and thus he is not barred from raising the constitutionality of his conviction by habeas corpus. Cf. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Furthermore, under the law as it stood at the time of his trial, Slansky v. State, 192 Md. 94, 63 A.2d 599 (1949), it would not have availed the defendant to object to the instruction. See O'Connor v. Ohio, 87 S.Ct. 252 (Nov. 15, 1966).

Giles v. Maryland, 372 U.S. 767, 83 S.Ct. 1102, 10 L.Ed.2d 137 (1963). In that case, the constitutionality of section 5 had been brought into question, but the Supreme Court dismissed the appeal "for want of a substantial federal question."

Appellant objects that charging that "in a criminal case the jury are the judges of the law as well as of the facts" permits them to apply any concept of law they see fit to his case, and that this amounts to a deprivation of due process of law. He further argues that the instruction permits the jury to reach a different legal conclusion in his case from that which they might reach in another case presenting identical facts, and so denies him the equal protection of the law.

Every time the issue has been raised in the Court of Appeals of Maryland it has affirmed the constitutionality of section 5 without qualification. In 1949, this provision was attacked on due process grounds in Slansky v. State, 192 Md. 94, 63 A.2d 599 (1949). After a comprehensive and thorough analysis, tracing the historical development of the rule, the court concluded that although section 5 was "anachronistic," it was not unconstitutional. More recently, in Giles v. State, 229 Md. 370, 183 A.2d 359 (1962), the Maryland court again had occasion to consider this provision. Reviewing its decision in *Slansky*, the court found no reason for overturning it, on either due process or equal protection grounds.

■■■ The Maryland court has pointed out that juries in criminal cases are in reality not as unrestricted as the appellant suggests. The powers of the jury are hedged in a number of ways. Certain restraining powers lodged in the hands of the judges serve as a counterpoise. See Giles v. State, 229 Md. 370, 383–385, 183 A.2d 359, 365–366 (1962).

And it is doubtful whether in actuality juries vary in their application of legal principles more widely than judges vary among themselves. Traditionally, this constitutional provision has been understood as permitting the trial judge to determine the admissibility of evidence and the competency of witnesses, Rasin v. State, 153 Md. 431, 138 A. 338 (1927); Jules v. State, 85 Md. 305, 36 A. 1027 (1897), and in 1950 an amendment to section 5 of Article XV explicitly empowered the court to pass on the legal sufficiency of the evidence. Yanch v. State, 201 Md. 296, 93 A.2d 749 (1953).[2] If the jury's view of the law has led them to a verdict of guilty and the court is of the opinion that the verdict is against the law, the trial judge may set the verdict aside and grant a new trial. An even more significant limitation is the acknowledged power of the court to take a case from the jury and direct a verdict of acquittal. In Chisley v. State, 202 Md. 87, 95 A.2d 577 (1953), decided the same year that our defendant was tried, the State argued that if there is *any* evidence of murder, there can be no determination by the trial court, as a matter of law, that the evidence was insufficient to prove first degree murder. The Court of Appeals, however, rejected this argument. It declared that the 1950 amendment to section 5, providing that "the Court may pass upon the sufficiency of the evidence to sustain a conviction," not only gives the trial judge the power to direct an acquittal on the charge of murder, when there is *no* evidence of murder, but also empowers him to direct a verdict for the defendant even where there is some evidence of murder, but in the judge's understanding of the law the evidence is insufficient to go to the jury on the question of first degree murder.

Although a trial judge was always *permitted* to give advisory instructions,[3]

---

**2.** Prior to the enactment of this amendment which added the words "except that the Court may pass upon the sufficiency of the evidence to sustain a conviction," the question of the legal sufficiency of the evidence was exclusively for the *jury* to determine. Slansky v. State, 192 Md. 94,

63 A.2d 599 (1949); Wilson v. State, 181 Md. 1, 26 A.2d 770 (1942); Note, 1 Md. L.Rev. 175 (1937).

**3.** In a series of adjudications over a span of nearly a century, the Court of Appeals of Maryland has consistently held that,

prior to 1950, he could not be *required* to give them, and a refusal to do so upon request of counsel was held not erroneous. Slansky v. State, 192 Md. 94, 63 A.2d 599 (1949); Esterline v. State, 105 Md. 629, 66 A. 269 (1907); Bloomer v. State, 48 Md. 521 (1878); Broll v. State, 45 Md. 356 (1876); Wheeler v. State, 42 Md. 563 (1875). But Rule 756, section b, of the Maryland Rules of Procedure, originally promulgated in 1950, now provides that the court *must* give advisory instructions if requested to do so by counsel.[4] See Giles v. State, 229 Md. 370, 183 A.2d 359 (1962); Hardison v. State, 226 Md. 53, 172 A.2d 407 (1961).

█ Oddly, it has always been held that while juries are the judges of the law, a jury may not pass on the constitutionality of a statute. Bell v. State, 57 Md. 108 (1881); Franklin v. State, 12 Md. 236 (1858).

█ Not only has the validity of Article XV, section 5 been repeatedly upheld by the state court, but the Supreme Court of the United States has had occasion to consider it, and failed to intimate any doubt of its constitutionality. In Giles v. Maryland, 372 U.S. 767, 83 S.Ct. 1102, 10 L.Ed.2d 137 (1963), the Court dismissed an appeal, which raised this issue along with others, for want of a substantial federal question. In Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), in connection with a collateral matter, the Supreme Court again dealt with section 5. Without questioning its constitutionality, the Court commented that in making juries in criminal cases "the Judges of Law," the provision "does not mean precisely what it seems to say," 373 U.S. at 89, 83 S.Ct. at 1198, noting the limitations on this provision added by state statute or judicial construction. Of course, the action in *Giles* and *Brady* would not preclude the Court on more thorough consideration in a direct attack from reaching the opposite conclusion, but we cannot disregard the strong implications flowing from the fact that in its past decisions the Supreme Court perceived no invasion of a defendant's rights by the procedure established in section 5.

Potent and persuasive arguments have been leveled against the wisdom of the Maryland practice. A number of Maryland jurists have advocated repeal or modification of Article XV, section 5. Chief Judge Stedman Prescott, in his presidential address to the Maryland State Bar Association, called this provision "an anomalous situation" which "should not be permitted to remain as a blight upon the administration of justice in Maryland," and declared it to be "archaic, outmoded and atrocious." Prescott, Juries as Judges of the Law: Should the Practice be Continued?, 60 Md. S.B.A. 246, 257 (1955). Chief Judge William L. Henderson referred to it as "our unique and indefensible procedure." Henderson, The Jury as Judges of Law and Fact in Maryland, 52 Md. S.B.A. 184, 199 (1947). Chief Judge Samuel K. Dennis, of the Supreme Bench of Balti-

in view of § 5, instructions given the jury on law as well as facts are advisory only and in no way binding upon them, see, e. g., Slansky v. State, 192 Md. 94, 63 A.2d 599 (1949); Esterline v. State, 105 Md. 629, 66 A. 269 (1907); Jules v. State, 85 Md. 305, 36 A. 1027 (1897); Wheeler v. State, 42 Md. 563 (1875), and that the trial judge must inform the jury that his instructions are advisory only and they are free to follow their own judgment. Dick v. State, 107 Md. 11, 68 A. 286 (1907); Bell v. State, 57 Md. 108 (1881).

4. Rule 756, § b was first enacted in 1950 as Rule 6, § b, pt. 4, subd. I, General Rules of Practice and Procedure, by the Court of Appeals, pursuant to the authority granted it by Article IV, § 18A of the Maryland Constitution. This Rule, recodified as Rule 739, § b in 1957 and as Rule 756, § b in 1962—with no significant changes in the original language—now reads as follows:

The court may, and at the request of any party *shall*, give such advisory instructions to the jury as may correctly state the applicable law * * *. The court shall in every case in which instructions are given to the jury, instruct the jury that they are the judges of the law and that the court's instructions are advisory only. (Emphasis supplied.)

more City, described the provision as the "Constitutional thorn" in "the flesh of Maryland's body of Criminal Law." Dennis, Maryland's Antique Constitutional Thorn, 92 U.Pa.L.Rev. 34 (1943). Judge Charles Markell, later Chief Judge of the Court of Appeals, characterized the practice under the provision as "this incongruous state of criminal appeals in Maryland." Markell, Trial by Jury—a Two-Horse Team or One-Horse Teams?, 42 Md. S.B.A. 72, 81 (1937).[5]

It is significant that while vigorously condemning the practice developed under Article XV, section 5 as unsound, none of its major critics has expressed the view that it violates the federal constitution. Certainly there has been no such intimation concerning section 5 as amended in 1950.

The origin of the doctrine embodied in section 5 is not known with certainty. The principal theories propounded are the colonists' fear of tyrannical and arbitrary Crown judges, the large number of judges without legal training, and the capacity of a highly democratic tribunal, such as a jury, to decide matters, legal as well as factual, in small agricultural communities.[6] Whatever it was that generated the rule, opponents maintain that the reasons for it no longer exist, and the rule has now been abandoned in all but two jurisdictions, although fifty years ago a similar system of adjudication still prevailed in at least ten states.[7]

5. See 9 Wigmore, Evidence § 2559 (3d ed. 1940) (terming the right of juries in criminal cases to repudiate the instructions of the judge and to determine the law for themselves an "ill-advised doctrine, defiant of the fundamentals of law"). Cf. Sparf and Hansen v. United States, 156 U.S. 51, 715, 15 S.Ct. 273, 39 L.Ed. 343 (1895) (holding that in *federal* criminal prosecutions, juries are the judges of the facts, under *binding* instructions by the judge on questions of law).

6. Howe, Juries as Judges of Criminal Law, 52 Harv.L.Rev. 582, 591 (1939). See Slansky v. State, 192 Md. 94, 101, 63 A. 2d 599, 602 (1949).

The Maryland provision first appeared in the Constitution of 1851, after opposing views had been expressed in the Constitutional Convention as to the power of juries in criminal cases. It was thought to be merely a restatement of the common law, Franklin v. State, 12 Md. 236 (1858), but others have suggested that the delegates to the Convention may have been misled by Fox's Libel Act, never in force in Maryland, in which Parliament, dealing only with criminal libel cases, provided that jurors were not to be restricted to questions of fact, but "could give their verdict upon the whole matter in issue." Dennis, Maryland's Antique Constitutional Thorn, 92 U.Pa.L.Rev. 34, 37 (1943).

However, no less a political philosopher than John Adams was of the opinion that the jury was autonomous with respect to the law as well as the facts. According to him, the jury was not bound by the judge's opinion of the law. After expatiating upon the subject, he concluded:

The general Rules of Law and common Regulations of Society, under which ordinary Transactions arrange themselves, are well enough known to ordinary Jurors. The great Principles of the Constitution, are intimately known, they are sensibly felt by every Briton— it is scarcely extravagant to say, they are drawn in and imbibed with the Nurses Milk and first Air.

Now should the Melancholly Case arise, that the Judges should give their Opinions to the Jury, against one of these fundamental Principles, is a Juror obliged to give his Verdict generally according to this Direction, or even to find the fact specially and submit the Law to the Court. Every Man of any feeling or Conscience will answer, no. It is not only his right but his Duty in that Case to find the Verdict according to his own best Understanding, Judgment and Conscience, tho in Direct opposition to the Direction of the Court.

\* \* \* \* \*

The English Law obliges no Man to decide a Cause upon Oath against his own Judgment, nor does it oblige any Man to take any Opinion upon Trust, or to pin his faith on the sleve of any mere Man.

Adams' Diary Notes on the Right of Juries, February 12, 1771, in 1 Legal Papers of John Adams 230 (Wroth & Zobel ed. 1965).

7. In addition to Maryland and Indiana, states providing such a system by constitution or statute were Arizona, Connecticut, Georgia, Illinois, Louisiana, Oregon, Pennsylvania, and Tennessee. Slansky v. State, 192 Md. 94, 104, 63 A. 2d 599, 603 (1949).

Among the fifty states, Maryland and Indiana today stand alone in their adherence to it. Even Indiana has substantially attenuated its provision by judicial modification, holding as early as 1889 that a trial court in a criminal case "is not required to neutralize the effect of its instructions by telling the jury that they are at liberty to disregard them, and to decide the law for themselves." Bridgewater v. State, 153 Ind. 560, 566, 55 N.E. 737, 739 (1889). See also Beavers v. State, 236 Ind. 549, 141 N.E.2d 118 (1957); MacDonald v. State, 224 Ind. 74, 64 N.E.2d 794 (1946). Contra, Dick v. State, 107 Md. 11, 68 A. 286, 576 (1907); Bell v. State, 57 Md. 108 (1881); Dennis, Maryland's Antique Constitutional Thorn, 92 U.Pa.L.Rev. 34, 41 (1943).

 It is noteworthy that Maryland's Constitutional Convention Commission, which is currently drafting proposals for submission to a Constitutional Convention to be held next year, has under consideration a recommendation to delete section 5 from the Maryland Constitution.[8] Indeed, a subcommittee of that Commission, following the lead of the Maryland State Bar Association, has already recommended this step. There is thus less reason for a court, particularly a federal court, to anticipate the people of the State in effecting a change in their constitutional policy. Of course, if the invalidity of the provision were plain, we would have no alternative but so to declare, even if this would overturn an ancient practice. Cf. Schowgurow v. State, 240 Md. 121, 213 A.2d 475 (1965). But constitutionality and wisdom are not interchangeable terms; a practice may be deemed unwise, yet not be unconstitutional, just as not every constitutionally permissible procedure is necessarily desirable. Moreover, our reluctance to intervene on the present record is heightened by the absence of any suggestion that this particular defendant was prejudiced by the court's advising the jury of its right to determine the law for itself. There is nothing to indicate that the jury did not faithfully follow the view of the law expressed in the trial judge's instructions, which are concededly unexceptionable; nor is there an intimation that a different verdict would have resulted if the judge could have given binding rather than advisory instructions. The jury extended the defendant the consideration of recommending against capital punishment. However desirable a change in the constitutional policy may be, the question is one that appropriately should be addressed to others than the judiciary. The federal court's inquiry is the narrow one of whether Article XV, section 5 violates the defendant's constitutional rights. Neither on abstract principle nor in light of the operation of the provision in the instant case does this court find justification for disturbing the District Court's order of dismissal.

Affirmed.

---

8. Judge Dennis, a quarter century ago, pursuing his metaphor of "a thorn in the flesh," expressed the hope that some day "new men" would accomplish a "pain- less extraction." Perhaps the forthcoming Constitutional Convention will achieve this result.