**Tyrone JENKINS, Petitioner–Appellee,**

**v.**

**Ronald HUTCHINSON, Warden of Maryland House of Correction; Attorney General for the State of Maryland, Respondents–Appellants.**

**No. 99–6345.**

United States Court of Appeals, Fourth Circuit.

Argued June 7, 2000

Decided July 31, 2000

**ARGUED:** Mary Ann Rapp Ince, Assistant Attorney General, Criminal Appeals Division, Office of the Attorney General, Baltimore, Maryland, for Appellants. Mark Lawrence Gitomer, The Law Office

of Mark Gitomer, Baltimore, Maryland, for Appellee. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Criminal Appeals Division, Office of the Attorney General, Baltimore, Maryland, for Appellants.

Before WIDENER, WILKINS, and WILLIAMS, Circuit Judges.

## OPINION

WILKINS, Circuit Judge:

Tyrone Jenkins filed this petition for habeas corpus relief from his Maryland convictions for robbery with a deadly weapon, assault with intent to murder, and related weapons offenses. *See* 28 U.S.C.A. § 2254 (West 1994).[1] The district court, having found that advisory instructions given at Jenkins' trial violated his right to due process, granted the writ, and the State[2] appeals. Because we conclude that there is no bar to our consideration of the merits of Jenkins' claim and that the jury instructions were unconstitutional, we affirm.

## I.

Jenkins was convicted by a jury in the Circuit Court for Prince George's County, Maryland on August 14, 1975 and was sentenced to a term of 35 years, to be served consecutive to a prior sentence for a 1972 conviction. In accordance with a provision of the Maryland Constitution, the trial court had instructed the jury that in a criminal trial, the jury was the judge of the law as well as the facts.[3] Before giving specific instructions, the trial court began by explaining to the jury that it is

the Court's function to give to you certain *advisory instructions* with reference to this matter. You will note that I use the word "advisory" and I do so intentionally in that in this case, as is true in all criminal cases in Maryland, *it is the function of the jury to be the sole judges of both the facts and the law.* That is to say, it is up to you, the jury, solely, to determine what the factual situation was and then to apply to that factual situation what you find the law to be.

Accordingly, anything the Court says to you with reference both to the facts and the law is done so in an advisory capacity only.

J.A. 28 (emphasis added). After this preliminary explanation regarding the advisory nature of its instructions, the court then prefaced every instruction by reminding the jury that its instructions on the law were advisory only. In particular, with respect to the burden of proof, the court stated:

Further, *the Court says to you, in an advisory capacity,* that the burden of proof, which rests on the State, ... is that the Defendants must be found guilty at your hands only after you are satisfied beyond a reasonable doubt and to a moral certainty of the guilt of the Defendants, or either of them, of any or all of the charges brought against the Defendants.

*Id.* at 29 (emphasis added). Jenkins did not object to the advisory nature of the instructions at trial or on appeal.

---

1. Jenkins filed his habeas petition prior to the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub.L. No. 104–132, 110 Stat. 1214. Therefore, the amendments to 28 U.S.C.A. § 2254 affected by § 104 of the AEDPA do not govern our resolution of this appeal. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

2. Jenkins named William L. Smith, then Warden of the Maryland House of Correction, and J. Joseph Curran, Jr., the Attorney General for the State of Maryland, as Respondents.

Smith has since been replaced by Ronald Hutchinson. For ease of reference, we refer to Respondents collectively as "the State."

3. Article 23 of the Maryland Declaration of Rights currently provides that "[i]n the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact." At the time of Jenkins' trial, this provision was in article XV, section 5 of the Maryland Constitution, from which it was transferred in 1978. *See Ennis v. State,* 306 Md. 579, 510 A.2d 573, 580 & n. 11 (1986).

The Maryland Court of Special Appeals affirmed Jenkins' convictions, and the Maryland Court of Appeals denied Jenkins' petition for a writ of certiorari on July 25, 1976. Thereafter, Jenkins filed numerous petitions in state court seeking habeas corpus and post-conviction relief, all of which were denied.

Jenkins claims that he raised a challenge to the advisory jury instructions in his fifth petition for post-conviction relief. Although state court docket entries do not reflect the filing of a fifth post-conviction petition, and the State did not receive a copy of such a petition when it requested documents from the clerk of court, the state court, in its order denying Jenkins' fifth habeas petition, indicated that it was also addressing a "fifth petition for post conviction relief." *Id.* at 237. Responding to an issue it identified as "The trial Judge erroneously instructed the jury in an advisory capacity," *id.* at 239, the ruling by the state court on the claim, in its entirety, was as follows:

> Under the almost unique Maryland Constitutional provision, Article 23 of the Declaration of Rights, any instructions in criminal cases on the law which the court may give are purely advisory and the court must so inform the jury. *Schanker v. State,* 208 Md. 15, 116 A.2d 363 (1955); *Dillon v. State,* 277 Md. 571, 357 A.2d 360 (1976). Therefore this contention is without merit.

*Id.* at 239–40.

Jenkins subsequently filed this habeas action in federal court. Jenkins argued, *inter alia,* that the advisory nature of the reasonable doubt instruction relieved the State of its burden to prove every element of the charged offenses beyond a reasonable doubt, thereby violating his right to due process.[4] *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The district court denied relief as to all claims except the advisory jury instructions issue. The State now appeals,[5] arguing that Jenkins' claim is procedurally defaulted; that if not defaulted, Jenkins' claim is subject to the "new rule" doctrine of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); and that even if Jenkins' claim is not defaulted or *Teague*-barred, controlling precedent of this circuit mandates reversal.

## II.

### A.

The State argues that Jenkins defaulted this claim by failing to object to the advisory nature of the jury instructions at trial or on direct appeal. *See State v. Rose,* 345 Md. 238, 691 A.2d 1314, 1316–20 (1997) (holding that failure to object to reasonable doubt instruction at trial and failure to raise issue on appeal resulted in waiver of issue in collateral proceedings). Absent cause and prejudice or a miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. *See Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). In its response to Jenkins' fifth petition for post-conviction review, however, the state court

---

**4.** The trial court in Jenkins' case told the jury that all of its instructions were advisory, including the instructions regarding the presumption of innocence and the right to remain silent. We address only Jenkins' challenge to the reasonable doubt instruction, since the error with regard to this instruction alone is sufficient to grant the writ.

**5.** Jenkins asserted six grounds in support of habeas relief in addition to claiming that the advisory jury instructions deprived him of due process.

The district court denied Jenkins' petition in part and ordered supplemental briefing with respect to the advisory jury instructions issue. The court then granted the writ. *See Jenkins v. Smith,* 38 F.Supp.2d 417, 423 (D.Md.1999). The State subsequently moved to alter or amend the judgment, and the court denied the motion. *See Jenkins v. Smith,* 43 F.Supp.2d 556, 559 (D.Md.1999). The State appeals the order of the district court granting the writ. Jenkins does not cross-appeal the rejection of his other claims.

did not rule that Jenkins' challenge to the jury instructions was waived, but rather addressed the claim on the merits. Jenkins' claim is therefore not defaulted. *See Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (explaining that in order to preclude federal review, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case").

### B.

■ The State also argues that a holding that the advisory reasonable doubt instruction violated the Due Process Clause would constitute a "new rule" that cannot be applied retroactively to cases pending on collateral review. *See Teague,* 489 U.S. at 299–310, 109 S.Ct. 1060 (plurality opinion); *see also Caspari v. Bohlen,* 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (stating that the *Teague* inquiry is a "threshold question in every habeas case" in which it is argued by the State). The *Teague* inquiry involves three steps. *See O'Dell v. Netherland,* 521 U.S. 151, 156–57, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). First, we must determine the date on which Jenkins' convictions became final. Second, we must determine whether "a state court considering [Jenkins'] claim at the time his conviction[s] became final would have felt compelled by existing precedent" to conclude that the Constitution mandates a holding in his favor; if not, then the rule he seeks is a new one. *Id.* at 156, 117 S.Ct. 1969 (internal quotation marks omitted); *see Gilmore v. Taylor,* 508 U.S. 333, 340, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993) (stating that "put meaningfully for the majority of cases, a decision announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final" (internal quotation marks omitted)); *Butler v. McKellar,* 494

U.S. 407, 415, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990) (characterizing a new rule as one that is "susceptible to debate among reasonable minds"). If we determine that the rule is new, the final step is to determine if the rule "falls within one of the two narrow exceptions to the *Teague* doctrine." *O'Dell,* 521 U.S. at 156–57, 117 S.Ct. 1969.

■ Jenkins' convictions became final in October 1976.[6] Thus, the relevant inquiry for *Teague* purposes is whether a holding in favor of Jenkins was dictated by precedent existing in October 1976. Jenkins would have us hold that by informing the jury that its reasonable doubt instruction was advisory, the trial court effectively relieved the State of its burden to prove all of the elements of the charged offenses beyond a reasonable doubt. Accordingly, the question for purposes of the *Teague* analysis is whether such a holding was dictated by existing precedent in October 1976. We conclude that it was.

Six years before Jenkins' convictions became final, the Supreme Court announced in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that due process requires that the government prove each element of a crime beyond a reasonable doubt. *See Winship,* 397 U.S. at 364, 90 S.Ct. 1068 ("Lest there remain any doubt about the constitutional stature of the reasonable–doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *see also Cool v. United States,* 409 U.S. 100, 103–04, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972) (per curiam) (holding that an instruction which "allow[ed] the jury to convict despite its failure to find guilt beyond a reasonable doubt" mandates reversal of the conviction). In light of this precedent, we conclude that the rule Jenkins seeks is not a

---

**6.** It does not appear that Jenkins ever filed a petition for writ of certiorari with the United States Supreme Court after the Maryland Court of Appeals denied his petition for writ of certiorari on direct appeal. Thus, Jenkins' convictions and sentence became final for

purposes of *Teague* after the period for petitioning the Supreme Court for a writ of certiorari—90 days after the denial of Jenkins' petition for writ of certiorari to the Maryland Court of Appeals—had elapsed. *See Caspari,* 510 U.S. at 390–91, 114 S.Ct. 948.

new one.[7] Accordingly, the rule of *Teague v. Lane* does not bar our consideration of the merits of Jenkins' claim.[8]

We note that our conclusion here is not inconsistent with that in *Adams v. Aiken,* 965 F.2d 1306 (4th Cir.1992), *vacated sub nom. Adams v. Evatt,* 511 U.S. 1001, 114 S.Ct. 1365, 128 L.Ed.2d 42 (1994),[9] in which we held that the rule announced by the Supreme Court in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam), was a new rule. *See Adams,* 965 F.2d at 1311–12. At issue in *Cage* was the substance of a reasonable doubt instruction: The defendant argued that the definition of "reasonable doubt" given by the trial court was incorrect and consequently had the effect of reducing the State's burden of proof. The Court agreed, holding that the state trial court had incorrectly "equated a reasonable doubt with a 'grave uncertainty' and an

'actual substantial doubt.'" *Cage,* 498 U.S. at 41, 111 S.Ct. 328. Before *Cage,* the Court had never held that a definition of "reasonable doubt" violated due process, and we therefore concluded that "[w]hether a trial court's unconstitutional misdescription of the burden of proof in a criminal case violates the Due Process Clause was certainly an open question." *Adams v. Aiken,* 41 F.3d 175, 178 (4th Cir.1994).

The issue here, in contrast, is whether the jury was effectively given any reasonable doubt instruction at all; for if the jury understood the advisory nature of the instructions as permitting it to ignore the reasonable doubt instruction, then the jury could fashion any standard of proof that it liked. That the jury must be instructed that the Government is required to prove the defendant's guilt "beyond a reasonable doubt" was not an open question after *Winship.*[10]

**7.** The entirety of the State's argument that *Teague* bars our consideration of the merits of Jenkins' claim is that *Wyley v. Warden,* 372 F.2d 742 (4th Cir.1967), "is dispositive of the conclusion that Jenkins's state conviction complied with federal law." Brief of Appellants at 29 n. 4. This argument fails to address whether a holding for Jenkins was dictated by *Winship,* a case that was decided after *Wyley.* We explain *infra* why *Wyley* is not dispositive of the merits of Jenkins' claim.

**8.** Because we conclude that granting relief to Jenkins would not create a new rule, we need not conduct the final step in the *Teague* analysis.

**9.** In *Adams,* the defendant challenged a reasonable doubt instruction on the basis that the Supreme Court had held unconstitutional a similar instruction in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam). We held that the rule announced in *Cage* was a new rule that did not satisfy either of the exceptions to the *Teague* doctrine, and accordingly, we refused to consider the merits of Adams' claim. The Supreme Court vacated our judgment and remanded the case for further consideration in light of *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). *See Adams,* 511 U.S. at 1001, 114 S.Ct. 1365. As we explained on remand, *Sullivan*—in which the Court held that a constitutionally deficient reasonable doubt instruction can never be harmless error—did not call into question our

determination that the rule announced in *Cage* was new; rather, *Sullivan* required that we reconsider whether Adams' case satisfied an exception to the *Teague* doctrine. *See Adams v. Aiken,* 41 F.3d 175, 178 (4th Cir. 1994).

**10.** The Seventh Circuit was presented with a due process challenge to an advisory jury instruction in *Willis v. Aiken,* 8 F.3d 556 (7th Cir.1993). As an alternative holding, the court concluded that providing relief to Willis would result in the announcement of a new rule. *See Willis,* 8 F.3d at 567–68. It is not clear from the opinion whether Willis claimed that an advisory reasonable doubt instruction violated his due process rights under *Winship.* If in fact that is the holding that Willis sought, then we disagree with the analysis used by the Seventh Circuit.

The Seventh Circuit based its conclusion that Willis sought a new rule on its determination that the case before it was similar to *Gilmore.* *See id.* at 568. At issue in *Gilmore* were Illinois pattern jury instructions, under which the jury was informed first of the elements of murder and then of the elements of voluntary manslaughter. The jury was not told that it could not return a murder conviction if it found that the defendant possessed a mitigating mental state; thus, it was possible for a jury to find that a defendant was guilty of murder without ever considering whether he was entitled to a conviction of voluntary

### III.

 Having concluded that providing the relief that Jenkins seeks would not result in the announcement of a new rule, we proceed to address the merits of his claim. When we address a challenge to the constitutionality of a reasonable doubt instruction, we inquire "whether there is a reasonable likelihood" that the jury applied the challenged instruction in an unconstitutional manner. *Victor v. Nebraska,* 511 U.S. 1, 6, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).

Here, the trial court clearly explained at the beginning of its charge to the jury that the jury was the sole judge of the law and that the instructions given by the court were advisory only. With each individual instruction, the court reminded the jury of the advisory nature of the instructions. We conclude that there is a reasonable likelihood that the jury interpreted these instructions as allowing it to ignore the "advice" of the court that the jury should find proof beyond a reasonable doubt. Accordingly, we conclude that the advisory instructions violated Jenkins' right to due process.

The State argues[11] that the issue of whether an advisory reasonable doubt instruction violates the federal Constitution was decided against Jenkins in *Wyley v. Warden,* 372 F.2d 742 (4th Cir.1967), and that *Wyley* "is dispositive of the conclusion that Jenkins's state conviction complied with federal law." Brief of Appellants at 29 n. 4. This assertion is incorrect for two reasons.

First, *Wyley* was decided before *Winship.* Thus, when we decided *Wyley,* we did not yet have the benefit of the Supreme Court's holding that a jury must find the defendant guilty beyond a reasonable doubt in order to comply with the federal Constitution. *Cf. Etheridge v. Norfolk & W. Ry. Co.,* 9 F.3d 1087, 1090 (4th Cir.1993) (stating that "[a] decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court *or a superseding contrary decision of the Supreme Court"* (emphasis added) (internal quotation marks omitted)).

Second, in *Wyley* we primarily addressed the issue of whether the provision of the Maryland Constitution was constitutional on its face. Only at the end of our *Wyley* opinion did we state: "Moreover, our reluctance to intervene on the present record is heightened by the absence of any suggestion that this particular defendant was prejudiced by the court's advising the jury of its right to determine the law for itself." *Wyley,* 372 F.2d at 747. However, the Supreme Court has subsequently held that an error in an instruction that relieves the State of its burden of proof beyond a

manslaughter. In *Falconer v. Lane,* 905 F.2d 1129 (7th Cir.1990), the Seventh Circuit held that these instructions were unconstitutional. The Supreme Court subsequently held in *Gilmore* that the rule announced in *Falconer*—that instructions which allow the jury to ignore an affirmative defense are unconstitutional—was a new rule. *See Gilmore,* 508 U.S. at 340, 344, 113 S.Ct. 2112; *id.* at 349, 113 S.Ct. 2112 (O'Connor, J., concurring in the judgment).

The rule that Jenkins seeks here, in contrast, is that instructions which reduce the State's burden of proof are unconstitutional. In determining that *Falconer* had announced a new rule, the Court explained in *Gilmore* that the "actual flaw found by the *Falconer* court in the challenged jury instructions ... was *not* that they somehow lessened the State's burden of proof below that constitu-

tionally required by cases such as *In re Winship." Id.* at 340, 113 S.Ct. 2112 (emphasis added). Thus, *Gilmore* does not support the conclusion that the holding Jenkins seeks is a new rule.

**11.** The State devotes much of its brief to arguing that the instructions given at Jenkins' trial comported with Maryland law at the time and that subsequently decided Maryland cases suggesting that the instructions violated Maryland law cannot be retroactively applied. The correctness of the advisory instructions as a matter of state law, however, is irrelevant to the due process claim raised by Jenkins. Essentially, Jenkins argues that giving an advisory reasonable doubt instruction, even if proper as a matter of state law, violates the Due Process Clause of the federal Constitution.

reasonable doubt can never be harmless. *See Sullivan v. Louisiana,* 508 U.S. 275, 278–82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).[12]

## IV.

In summary, Jenkins' claim was not procedurally defaulted, and his claim is not *Teague*-barred. Having considered the merits, we hold that Jenkins' due process rights were violated by the advisory jury instructions given at his trial. Accordingly, we affirm the order of the district court granting the writ of habeas corpus.

*AFFIRMED*

---

**12.** The State also relies on *Wilkins v. Maryland,* 402 F.Supp. 76 (D.Md.1975), *aff'd,* 538 F.2d 327 (4th Cir.1976) (table). The challenge in that case, however, was a generalized challenge to advisory instructions, and the district court rejected the challenge by relying on *Wyley. See Wilkins,* 402 F.Supp. at 82. As we have explained, to the extent *Wyley* addressed an as-applied challenge comparable to the one we address here, *Wyley* was superseded by *Winship* and *Sullivan.* Thus, although *Wilkins* was decided after *Winship,* it is not dispositive here, due to its reliance on *Wyley.*