*695 BARBERA, C.J.
In May 2012, we decided Unger v. State, 427 Md. 383, 48 A.3d 242 (2012), and denied a motion to reconsider our decision in August of the same year. We granted certiorari to consider the State’s request that we overrule what we decided in Unger little more than three years ago. We decline to overrule Unger and return to what once was the law. To hold otherwise would depart from the principles of stare decisis, generate uncertainty, and, ultimately, undermine trust and confidence in the rule of law.
I.
In order to appreciate the legal issues and arguments of the parties, it is useful at the outset to understand what this Court held in Unger. Unger followed a series of cases, Stevenson v. State, 289 Md. 167, 423 A.2d 558 (1980), Montgomery v. State, 292 Md. 84, 437 A.2d 654 (1981), and State v. Adams, 406 Md. 240, 958 A.2d 295 (2008), all of which involved the “advisory only” jury instruction prompted by Article 23 of the Maryland Declaration of Rights. Article 23 reads: “In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction.” This Court promulgated Maryland Rule 756b to implement Article 23.[1] The Rule required judges, “in every case in which instructions are given to the jury, [to] instruct the jury that they are the judges of the law and that the court’s instructions are advisory only.”
In 1980, this Court considered whether Article 23, as interpreted by prior decisions, ran afoul of the guarantees afforded State criminal defendants by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Court in Stevenson construed Article 23 to mean that only those instructions concerning “disputes as to the substantive *696 ‘law of the crime’ ” are advisory; all other instructions to the jury are binding. 289 Md. at 180, 423 A.2d 558. The next year, in Montgomery, the Court reinforced its Stevenson interpretation of Article 23, emphasizing that advisory only instructions are “limited to those instances when the jury is the final arbiter of the law of the crime.” 292 Md. at 89, 437 A.2d 654.
Almost 28 years later, we decided Adams, a postconviction case. We concluded in Adams, essentially consistent with Stevenson and Montgomery, that, under Article 23, the jury’s role as judge of the law in a criminal case is limited to disputes relating to the substantive law of the crime and “all other legal issues are for the judge alone to decide.” 406 Md. at 256-59, 958 A.2d 295. Notable for present purposes, we held in Adams that the Stevenson interpretation of Article 23, as reinforced by Montgomery, “did not announce new law.” Id. at 256, 958 A.2d 295. We further held in Adams that trial counsel’s failure to object to the advisory only instruction constituted a waiver of Adams’s right to challenge the instruction in the subsequent postconviction action. Id. at 266, 958 A.2d 295.
We re-examined our holdings in Adams three and a half years later in Unger. It was clear to the Court that “Stevenson and Adams were wrongly decided.” Unger, 427 Md. at 417, 48 A.3d 242. The Court in Unger overruled “[t]hose portions of the Court’s Stevenson, Montgomery, and Adams opinions, holding that the interpretation of Article 23 in Stevenson and Montgomery was not a new State constitutional standard.” Id. We also overruled the waiver holdings in those cases, id., determining that the “failure to object to advisory only jury instructions in criminal trials prior to Stevenson will not constitute a waiver,” id. at 391, 48 A.3d 242. We made those holdings fully retroactive. Id. at 416, 48 A.3d 242. The Unger decision effectively opened the door to postconviction relief for persons tried during the era of the advisory only jury instruction — an opportunity that had been foreclosed by Stevenson, Montgomery, and Adams.
Against this backdrop, we turn to the case before us.
*697 II.
This case arises from the 1976 trial of Respondent, Peter Sutro Waine. Waine was tried before a jury in the Circuit Court for Harford County on two charges of first degree murder and a related larceny. At the close of all the evidence, pursuant to Rule 756b, the judge began his instructions to the jury with the following reference to Article 23:
Under the Constitution and laws of the State, the jury in a criminal case is the judge of both the law and the facts and anything that I say to you about the law is advisory only. It is intended to help you, but you are at liberty to reject the Court’s advice on the law and to arrive at your own independent conclusion on it, if you desire to do so.
The judge concluded his instructions with a reiteration of his opening instruction: ‘You are not partisans. You are judges, judges of the facts and the law. Your sole interest is to ascertain the truth from the evidence in the case.” Waine’s counsel did not object to those instructions. After deliberating for less than three hours, the jury returned guilty verdicts on all counts. The judge imposed consecutive life sentences on the two murder convictions and an additional 14 years, consecutive to the second life sentence, on the larceny conviction.
Waine noted an appeal to the Court of Special Appeals, which, in 1977, affirmed the judgment. Waine v. State, 37 Md.App. 222, 247, 377 A.2d 509 (1977). Waine, representing himself, made initial efforts to seek certiorari review and postconviction relief but, in the end, did not file the petitions.
In 1997, Waine, assisted by counsel, sought postconviction relief for the first time. Waine claimed ineffective assistance of counsel at both the trial and appellate levels, and asserted, among 19 other claims, that the trial judge erred when he gave the advisory only jury instructions. The postconviction court, in denying relief, rejected Waine’s claim that the erroneous jury instructions contravened fundamental constitutional rights and ruled that this claim was waived by trial counsel’s failure to object to the jury instructions during trial. The *698 Court of Special Appeals denied Waine’s application for leave to appeal the denial of postconviction relief.
In September 2007, counsel for Waine filed a motion to reopen the petition for postconviction relief, relying in part on Jenkins v. Hutchinson, 221 F.3d 679 (4th Cir.2000). Jenkins had sought federal habeas corpus relief from his 1975 Maryland conviction. Id. at 681. He argued that the advisory only jury instruction given at trial violated his right to due process by allowing the jury to disregard the State’s burden to prove his guilt beyond reasonable doubt. The United States Court of Appeals for the Fourth Circuit agreed with Jenkins.[2] The Jenkins court recognized the legal question as “whether the jury was effectively given any reasonable doubt instruction at all; for if the jury understood the advisory nature of the instructions as permitting it to ignore the reasonable doubt instruction, then the jury could fashion any standard of proof that it liked.” Id. The court noted that, after In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), it was no longer an “open question” that “the jury must be instructed that the Government is required to prove the defendant’s guilt ‘beyond a reasonable doubt[.]’ ” Jenkins, 221 F.3d at 684. The Jenkins court held, by application of Winship, that Maryland’s advisory only jury instruction violates due process.
Waine’s motion to reopen his postconviction proceeding lay dormant until 2012, when the circuit court, citing our recently filed opinion in Unger, granted the motion. The court found, based on Unger, that “it would be in the interest of justice to allow a reopening of the Petitioner’s postconviction application in this court ... on only one issue — the alleged erroneous jury instruction advising the jury that they were the judges of the law and the facts.”
Following a hearing, the postconviction court issued a memorandum opinion granting Waine postconviction relief. The court rejected the State’s claim of waiver as having been *699 “foreclosed by Unger.” The court also rejected the State’s contention that Waine was not prejudiced by the advisory only instruction because of other instructions to the jury. The court concluded that the advisory only instruction went “to the very core of due process of law” and, based on the full retroactivity conferred by Unger, ordered that Waine was entitled to a new trial.
The Court of Special Appeals denied the State’s application for leave to appeal in an unreported opinion addressing the merits of the postconviction court’s grant of relief under Unger. We granted the State’s certiorari petition to answer three questions, which we have reworded:
1. Should Unger be overruled?
2. Assuming Unger is not overruled, did the circuit court exercise proper discretion in reopening Waine’s postconviction proceeding, and more generally, does a circuit court retain discretion to deny reopening a postconviction proceeding to address a challenge to an advisory jury instruction?
3. Assuming Unger is not overruled, what is the proper standard by which a court should evaluate advisory only jury instructions?
III.
The State urges us to overrule Unger, arguing that, in deciding Unger, we departed from stare decisis in an unprecedented and improper manner. The State protests that the decision has left circuit courts across Maryland “in turmoil” and has resulted in “chaotic” litigation. The State asks us to calm these unsettled waters by resurrecting Adams. Waine and amici in support of him and persons similarly situated urge us not to disturb Unger as the case declares the current state of the law and should remain intact, as faithful adherence to the doctrine of stare decisis demands.
“Stare decisis means ‘to stand by the thing decided,’ and is ‘the preferred course because it promotes the even *700 handed, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.’ ” Livesay v. Balt. Cnty., 384 Md. 1, 14, 862 A.2d 33 (2004) (quoting Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)); accord State v. Stachowski, 440 Md. 504, 520,103 A.3d 618 (2014). In Stachowski, we reiterated: “The crux of the doctrine of stare decisis is that courts should reaffirm, follow, and apply ordinarily the published decisional holdings of our appellate courts even though, if afforded a blank slate, the court might decide the matter differently.” 440 Md. at 520, 103 A.3d 618 (citing Coleman v. Soccer Ass’n of Columbia, 432 Md. 679, 689, 69 A.3d 1149 (2013)).
We have recognized two exceptions for departing from stare decisis. “We may decline to follow the doctrine when persuaded the prior decision is clearly wrong, or when the precedent has been rendered archaic and inapplicable to modern society through the passage of time and evolving events.” Id. (citation omitted); see also Unger, 427 Md. at 417, 48 A.3d 242 (“[UJnder the doctrine of stare decisis, a court’s previous decisions should not be lightly set aside, nevertheless the rule of stare decisis is not an absolute.”) (internal quotation marks omitted).
The State insists that Unger deviated from the doctrine of stare decisis and that a return to Adams, decided three and a half years earlier, is required. To the contrary, it is Unger, not Adams, to which the dictates of stare decisis must now apply. Unless we are persuaded that Unger is either “clearly wrong and contrary to established principles” or “superseded by significant changes in the law,” we must leave the decision standing. DRD Pool Serv., Inc. v. Freed, 416 Md. 46, 64, 5 A.3d 45 (2010) (internal quotation marks omitted). The State has not persuaded us that either of these exceptions applies.
The State makes no argument that Unger is archaic, superseded by a significant change in the law, or rendered inapplicable to modern society by the passage of time. The State *701 concentrates solely on arguing that the decision was clearly wrong and contrary to established principles. The State argues that the Unger Court wrongly held that Stevenson set forth a new interpretation of Article 23. The State picks its way carefully around the analysis in both Stevenson and Unger to paint a picture of clear error, but neglects to include the full bore of the Court’s analysis for determining that a new constitutional rule had been laid in Stevenson.
The Unger Court, in reaching the legal conclusions that it did, applied the very principles of, and exceptions to, the doctrine of stare decisis that the State relies upon in seeking a return to the holdings of the Stevenson, Montgomery, and Adams cases. In Unger, this Court analyzed the law existing at the time of Stevenson, including Maryland Rule 756b[3] requiring courts to give the advisory only jury instruction. See Unger, 427 Md. at 411-16, 48 A.3d 242. We have reviewed independently the Unger Court’s extensive analysis and need not repeat it here. It is enough to say that the Court was not wrong, much less clearly wrong, in determining *702 that Stevenson and Montgomery established a new State constitutional standard that could not be considered waived, requiring the overruling of Adams and the portions of Stevenson and Montgomery that held to the contrary.
The State is in the unfortunate position of decrying the “ping-pong” between the Court’s holding in Adams and Unger, decided three and a half years apart, and seeking just one more “ping” by urging that Unger be overruled and Adams resurrected. We must decline. Where the Court has previously recognized a new State constitutional standard as fundamental to due process, deference to that precedent ensures the constancy upon which due process endures.
IV.
We turn next to the State’s contention that the circuit court erred by granting Waine’s motion to reopen his petition for postconviction relief to entertain his Unger claim. The State argues that the court’s rationale for granting the petition demonstrates the court’s failure to recognize that it had the discretion to deny reopening. We disagree.
The circuit court’s written statement of reasons for reopening the postconviction proceeding to hear the Unger claim demonstrates that the court both recognized that the decision to reopen is discretionary and properly exercised that discretion. It is evident that the court had carefully reviewed the record and relevant case law, including Gray v. State, 388 Md. 366, 879 A.2d 1064 (2005), and Unger, understood that Unger has retrospective application to specific advisory only instructions; appreciated that the claim of error reached “to the very core of due process of law”; and concluded that reopening the proceeding to consider that claim for relief would be in the interests of justice.
The State also argues 'that, should we decline to overrule Unger, as we have done, we should consider whether judges retain discretion to deny motions to reopen postconviction proceedings after Unger. We recognized in Gray that a change in the law intended to apply retroactively meets the *703 “interests of justice” standard for reopening a petition for postconviction relief. 388 Md. at 382-83, 879 A.2d 1064. This is both independent of and consistent with Section 7-106(c)(2) of the Criminal Procedure Article:
Notwithstanding any other provision of this title, an allegation of error may not be considered to have been finally litigated or waived under this title if a court whose decisions are binding on the lower courts of the State holds that:
(i) the Constitution of the United States or the Maryland Constitution imposes on State criminal proceedings a procedural or substantive standard not previously recognized; and
(ii) the standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner’s conviction or sentence.
Md.Code Ann., Crim. Proc. § 7-106(c)(2) (2001, Repl.Vol. 2008). Given the nature of this claim and others like it, the legal landscape that prevailed at the time of Waine’s trial, and the case law that developed in the decades between Stevenson and Unger suggesting the likelihood that an unobjected to jury instruction would be considered waived, it can hardly be said that reopening a postconviction proceeding to consider an Unger claim would be an abuse of discretion.
Y.
Finally, the State asks us to consider what test a court must apply in considering a challenge to an advisory only jury instruction. Rather than adopting the standard set forth in Unger, the State urges that advisory only instructions be considered on a case by case basis to determine whether there is a “reasonable likelihood” that the jurors understood the court’s Article 23 instruction as allowing them to convict a defendant on less than proof beyond a reasonable doubt. The State’s reliance on the “reasonable likelihood” test is misplaced, as this was the test adopted by the Supreme Court for review of jury instructions that are ambiguous. Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 *704 (1991) (“[I]n reviewing an ambiguous instruction such as the one at issue here, we inquire ‘whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way’ that violates the Constitution.” (quoting Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990))); see also Victor v. Nebraska, 511 U.S. 1, 6, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).
Ambiguity is not the issue in Article 23 advisory only jury instructions; rather, such instructions are clear, but erroneous, as they give the jury permission to disregard any or all of the court’s instructions, including those bedrock due process instructions on the presumption of innocence and the State’s burden of proving the defendant’s guilt beyond a reasonable doubt. See Unger, 427 Md. at 389, 409, 48 A.3d 242. This is illustrated by Sullivan v. Louisiana:
But the essential connection to a “beyond a reasonable doubt” factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates all the jury’s findings. A reviewing court can only engage in pure speculation — its view of what a reasonable jury would have done. And when it does that, the wrong entity judge[s] the defendant guilty.
Another mode of analysis leads to the same conclusion that harmless-error analysis does not apply: In Fulminante, we distinguished between, on the one hand, structural defects in the constitution of the trial mechanism, which defy analysis by harmless-error standards, and, on the other hand, trial errors which occur during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented. Denial of the right to a jury verdict of guilt beyond a reasonable doubt is certainly an error of the former sort, the jury guarantee being a basic protectio[n] whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function. The right to trial by jury reflects, we have said, a profound judgment about the way in which law should be enforced and justice administered. The deprivation of that right, with consequences that are *705 necessarily unquantifiable and indeterminate, unquestionably qualifies as “structural error.”
508 U.S. 275, 281-82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (alteration in original) (internal quotation marks and citations omitted) (citing Arizona v. Fulminante, 499 U.S. 279, 307-09, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).
The rationale underpinning Sullivan applies equally to advisory only jury instructions. We therefore hold that the trial court’s giving the advisory only jury instruction was structural error not susceptible to harmless error analysis and that the conviction must be vacated.
VI.
In sum, we uphold Unger as the law regarding advisory only jury instructions. The postconviction court properly granted Waine relief in the form of a new trial. The Court of Special Appeals affirmed that ruling. We, in turn, affirm the judgment of the Court of Special Appeals.
JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY HARFORD COUNTY.
HARRELL and ADKINS, JJ., join in judgment only.
WATTS, J., dissents.
Judges HARRELL and ADKINS join the judgment only. Judge HARRELL writes separately as follows, to which sentiments Judge ADKINS subscribes.
HARRELL, J.
I feel a little like Jabez Stone.[1] Judge Watts’s dissenting opinion in this case is quite tempting, given my dissent in Unger v. State, 427 Md. 383, 418-40, 48 A.3d 242, 262-76 *706 (2012); however, more compelling here is my respect for the doctrine of stare decisis.[2] One could say (and the irony is not lost on me) that I am hoisting myself on my own petard. Nonetheless, I will not require the services of Daniel Webster to fight for my soul.
I can articulate no changes in society between 2012 and now that would justify not honoring the stare decisis effect of Unger in Waine’s case. Similarly, no new jurisprudential principles or statutory changes have arisen during that time which would justify labeling Unger “clearly wrong, contrary to established principles, or superseded by significant changes in the law.” To be certain, Unger was decided wrongly, but I cannot label it “clearly wrong.”
By the same token, I do not subscribe to the overly reverential tone in the Majority opinion here of Unger. For example, the Majority opinion states, “[t]he Unger Court, in reaching the legal conclusions that it did, applied the very principles of, and exceptions to, the doctrine of stare decisis....” Maj. Op. at 701, 122 A.3d at 299. To this, I respond, “Seriously? ? ?”— see my dissent in Unger, 427 Md. at 430-33, 48 A.3d at 269-71.
For these reasons, Judge Adkins and I do not join the Majority opinion, but join the judgment only.

. Maryland Rule 756b was promulgated in 1961. Earlier versions of this Rule were similar in substance but were numbered differently. See infra n. 3 (explaining, in more detail, the renumbering and restructuring of this Rule).

. The Fourth Circuit determined that, because the state court had addressed Jenkins's claim on the merits, the claim was not defaulted, and federal review was not precluded. Jenkins, 221 F.3d at 682-83.

. Maryland implemented Article 23 through Rule 756b:
The court may and at the request of any party shall, give such advisory instructions to the jury as may correctly state the applicable law; the court may give its instructions either orally or in writing. The court need not grant any requested instruction if the matter is fairly covered by the instructions actually given. The court shall in every case in which instructions are given to the jury, instruct the jury that they are the judges of the law and the court’s instructions are advisory only.
Md. Rule 756b (emphasis added). In 1977, the Rule implementing Article 23 was revised and renumbered as 757b, yet the substantive language did not change:
The court may, and at the request of any party shall, give those advisory instructions to the jury as correctly state the applicable law. The court may give its instructions orally or, with the consent of the parties, in writing. The court need not grant any requested instruction if the matter is fairly covered by the instructions actually given. In every case in which instructions are given to the jury the court shall instruct the jury that they are the judges of the law and that the court’s instructions are advisory only.
Md. Rule 757b (emphasis added). In 1984, this Rule was revised and restructured as Rule 4-325. When Rule 4-325 was promulgated, the advisory only jury instruction was omitted.

. The New Hampshire farmer tempted by (and succumbing to) Mr. Scratch's blandishments in Stephen Vincent Benet's short story "The Devil and Daniel Webster" (1937).

. Had the Majority in Unger paid more than lip service to stare decisis, State v. Adams, 406 Md. 240, 958 A.2d 295 (2008), would not have been reversed and would still be the law of Maryland. I agree with Judge Watts’s surmise that the different outcome in Unger on the identical question decided in Adams had all to do with the changes in who sat on the Court in 2012 than in 2008, and little to nothing to do with any intervening sea change in the modernity of society or the creation of new jurisprudential reasons from which Adams could be said (with any legitimacy) to have been "clearly wrong.”