ROBINSON, J., concurring.
 

 I join the majority's decision not to disturb
 
 State v. Santiago,
 

 318 Conn. 1
 
 , 9,
 
 122 A.3d 1
 
 (2015),
 
 [1]
 
 which held that, "in light of the
 governing constitutional principles and Connecticut's unique historical and legal landscape ... following its prospective abolition, this state's death penalty no longer comports with contemporary standards of decency and no longer serves any legitimate penological purpose. For these reasons, execution of those offenders who committed capital felonies prior to April 25, 2012, would violate the state constitutional prohibition against cruel and unusual punishment." My decision to join the majority's decision to reverse the death sentence of the defendant, Russell Peeler, is significantly informed by the unique position that I hold as the only active member of this court who did not sit to decide
 
 Santiago,
 
 which was a four to three decision. In my view, stare decisis considerations
 of this court's institutional legitimacy and stability are at their zenith in this particular case, given that the
 
 only
 
 thing that has changed since this court decided
 
 Santiago
 
 is the composition of this court.
 
 [2]
 
 Having considered
 
 Santiago
 
 in
 light of the arguments raised by the parties in this
 appeal, I conclude that it is not so clearly wrong that we should risk damaging this court's institutional stability by overruling it. Put differently, because it would imperil our state's commitment to the rule of law for it to appear that a change in the composition of the court resulted in the immediate retraction of a landmark state constitutional pronouncement, I join in the court's decision to uphold
 
 Santiago.
 

 The background legal principles governing the doctrine of stare decisis are well established. "The doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." (Internal quotation marks omitted.)
 
 State v. Salamon,
 

 287 Conn. 509
 
 , 519,
 
 949 A.2d 1092
 
 (2008). "This court has repeatedly acknowledged the significance of stare decisis to our system of jurisprudence because it gives stability and continuity to our case law.... Stare decisis is a formidable obstacle to any court seeking to change its own law.... It is the most important application of a theory of [decision-making] consistency in our legal culture and it is an obvious manifestation of the notion that [decision-making] consistency itself has normative value.... Stare decisis does more than merely push courts in hard cases, where they are not convinced about what justice requires, toward decisions that conform with decisions made by previous courts.... The doctrine is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception
 that the law is relatively unchanging, it saves resources and it promotes judicial efficiency....
 

 "As this court has stated many times, [t]he true doctrine of stare decisis is compatible with the function of the courts.... [T]here is no question but that [a] decision of this court is a controlling precedent until overruled or qualified.... [S]tare decisis ... serve[s] the cause of stability and certainty in the law-a condition indispensable to any well-ordered system of jurisprudence....
 

 "Whether stare decisis serves the interests of judicial efficiency, protection of expectations, maintenance of the rule of law, or preservation of judicial legitimacy, however, is not dispositive. The value of adhering to precedent is not an end in and of itself, however, if the precedent reflects substantive injustice. Consistency must also serve a justice related end.... When
 
 a prior decision is seen so clearly as error
 
 that its enforcement [is] for that very reason doomed ... the court should seriously consider whether the goals of stare decisis are outweighed, rather than dictated, by the prudential and pragmatic considerations that inform the doctrine to enforce a clearly erroneous decision. Stare decisis is not an inexorable command.... The court must weigh [the] benefits [of stare decisis] against its burdens in deciding whether to overturn a precedent it thinks is unjust. The rule of stare decisis may entail the sacrifice of justice to the parties in individual cases, but, far from being immune from considerations of justice, it
 must always be tested against the ends of justice more generally....
 

 "Indeed, this court has long believed that although [s]tare decisis is a doctrine developed by courts to accomplish the requisite element of stability in court-made law, [it] is not an absolute impediment to change.... [S]tability should not be confused with perpetuity.
 

 If law is to have a current relevance, courts must have and exert the capacity to change a rule of law when reason so requires.... [I]t is more important that the court should be right upon later and more elaborate consideration of the cases than consistent with previous declarations. Those doctrines only will eventually stand which bear the strictest examination and the test of experience.... The United States Supreme Court has said that when it has become convinced of former error, it has never felt constrained to follow precedent....
 

 "[One] well recognized exception to stare decisis under which a court will examine and overrule a prior decision ... [is when that prior decision] is
 
 clearly wrong
 
 .... The doctrine [of stare decisis] requires a clear showing that an established rule is incorrect and harmful before it is abandoned.... Because stare decisis is not a rule of law but a matter of judicial policy ... it does not have the same kind of force in each kind of case so that adherence to or deviation from that general policy
 
 may depend upon the kind of case involved, especially the nature of the decision to be rendered that may follow from the overruling of a precedent.
 
 " (Citations omitted; emphasis altered; footnote omitted; internal quotation marks omitted.)
 
 Conway v. Wilton,
 

 238 Conn. 653
 
 , 658-61,
 
 680 A.2d 242
 
 (1996). "In short, consistency must not be the only reason for deciding a case in a particular way, if to do so would be unjust. Consistency obtains its value best when it promotes a just decision." Id., at 662,
 
 680 A.2d 242
 
 .
 

 Guided by these general principles, I first observe that the timing of our consideration of the present case renders stare decisis considerations particularly strong with respect to the public's perception of this court's legitimacy in its exercise of its core function of constitutional interpretation. See
 
 State v. Ferguson,
 

 260 Conn. 339
 
 , 367,
 
 796 A.2d 1118
 
 (2002) ("[w]e will not revisit the same issues we so recently have decided"). In contrast
 to other cases, wherein the passage of time has yielded factual or legal developments that serve as a basis for a challenge to the decision under attack; see, e.g.,
 
 Campos v. Coleman,
 

 319 Conn. 36
 
 , 37-38,
 
 123 A.3d 854
 
 (2015) (overruling
 
 Mendillo v. Board of Education,
 

 246 Conn. 456
 
 , 495-96,
 
 717 A.2d 1177
 
 [ (1998) ], and recognizing derivative cause of action for loss of parental consortium by minor child);
 
 State v. Salamon,
 
 supra,
 
 287 Conn. at 522-28
 
 ,
 
 949 A.2d 1092
 
 (interpretation of kidnapping statutes); all that has changed since
 
 Santiago
 
 was decided "is the composition of this [c]ourt, which is not a valid reason for ignoring stare decisis principles."
 
 Haynes v. State,
 

 273 S.W.3d 183
 
 , 187 (Tex.Crim.App.2008), overruled on other grounds by
 
 Bowen v. State,
 

 374 S.W.3d 427
 
 (Tex.Crim.App.2012) ; see also
 
 Wheatfall v. State,
 

 882 S.W.2d 829
 
 , 843 (Tex.Crim.App.1994) (The court rejected the argument that it "should consider the changing membership of the [United States] Supreme Court in our review of their precedent" because "this [c]ourt would be forced to reconsider every decision of the [United States] Supreme Court or our [c]ourt upon changes in membership. Such an endeavor would defeat one of the essential purposes of stare decisis."), cert. denied,
 
 513 U.S. 1086
 
 ,
 
 115 S.Ct. 742
 
 ,
 
 130 L.Ed.2d 644
 
 (1995). Indeed, as this court observed more than seventy years ago, "a change in the personnel of the court affords no ground for reopening a question which has been authoritatively
 settled."
 
 Tileston v. Ullman,
 

 129 Conn. 84
 
 , 86,
 
 26 A.2d 582
 
 (1942), appeal dismissed,
 
 318 U.S. 44
 
 ,
 
 63 S.Ct. 493
 
 ,
 
 87 L.Ed. 603
 
 (1943) ; accord
 
 Herald Publishing Co. v. Bill,
 

 142 Conn. 53
 
 , 62,
 
 111 A.2d 4
 
 (1955) ("[a] change in the personnel of the court never furnishes reason to reopen a question of statutory interpretation").
 

 The New York Court of Appeals has described the benefits of decisional stability in the face of the changing composition of the court, aptly stating that it "would
 have been scandalous for a court to shift within less than two years because of the replacement of one of the majority in the old court by one who now intellectually would have preferred to have voted with the old minority and the new one. The ultimate principle is that a court is an institution and not merely a collection of individuals; just as a higher court commands superiority over a lower not because it is wiser or better but because it is institutionally higher. This is what is meant, in part, as the rule of law and not of men."
 
 People v. Hobson,
 

 39 N.Y.2d 479
 
 , 491,
 
 348 N.E.2d 894
 
 ,
 
 384 N.Y.S.2d 419
 
 (1976) ; see also
 
 People v. Taylor,
 

 9 N.Y.3d 129
 
 , 148,
 
 878 N.E.2d 969
 
 ,
 
 848 N.Y.S.2d 554
 
 (2007) ("Stare decisis is deeply rooted in the precept that we are bound by a rule of law-not the personalities that interpret the law. Thus, the closeness of a vote bears no weight as to a holding's precedential value as a controversy settled by a decision in which a majority concur should not be renewed without sound reasons...." [Citation omitted; internal quotation marks omitted.] ); S. Wachtler, "Stare Decisis and a Changing New York Court of Appeals,"
 
 59 St. John's L.Rev. 445
 
 , 455-56 (1985) (describing "necessary balance between stability and innovation," and stating that "[j]udiciously applied in a proper case, the doctrine of stare decisis will allay the fears of those who look with apprehension upon the ongoing personnel changes in the [New York] Court of Appeals").
 

 Put differently, for me to join this court and near immediately disturb this court's so recently decided landmark decision in
 
 Santiago
 
 would require me, in the words of Justice Thurgood Marshall, to embrace the principle that "[p]ower, not reason, is the new currency of this [c]ourt's decisionmaking."
 
 Payne v. Tennessee,
 

 501 U.S. 808
 
 , 844,
 
 111 S.Ct. 2597
 
 ,
 
 115 L.Ed.2d 720
 
 (1991) (Marshall, J., dissenting); see
 
 id.
 
 (Justice Marshall dissented from the court's decision to overrule
 
 Booth v. Maryland,
 

 482 U.S. 496
 
 ,
 
 107 S.Ct. 2529
 
 ,
 
 96 L.Ed.2d 440
 
 [ (1987) ], and
 
 South Carolina v. Gathers,
 

 490 U.S. 805
 
 ,
 
 109 S.Ct. 2207
 
 ,
 
 104 L.Ed.2d 876
 
 [ (1989) ], and to permit the admission of victim impact evidence during the penalty phases of capital trials because "[n]either the law nor the facts supporting
 
 Booth
 
 and
 
 Gathers
 
 underwent any change in the last four years. Only the personnel of this [c]ourt did."). I agree with Justice Marshall that "stare decisis is important not merely because individuals rely on precedent to structure their commercial activity but because fidelity to precedent is part and parcel of a conception of the judiciary as a source of impersonal and reasoned judgments.... Indeed, this function of stare decisis is in many respects even more critical in adjudication involving constitutional liberties than in adjudication involving commercial entitlements. Because enforcement of the [federal] [b]ill of [r]ights and the [f]ourteenth [a]mendment [to the United States constitution] frequently requires this [c]ourt to rein in the forces of democratic politics, this [c]ourt can legitimately lay claim to compliance with its directives only if the public understands the [c]ourt to be implementing principles ... founded in the law rather than in the proclivities of individuals." (Citation omitted; emphasis omitted internal quotation marks omitted.)
 
 Payne v. Tennessee,
 

 supra, at 852-53
 
 ,
 
 111 S.Ct. 2597
 
 (Marshall, J., dissenting).
 
 [3]
 
 My sensitivity to stare decisis in this case is heightened by the fact that we are called on to reconsider the court's conclusion in
 
 Santiago
 
 that the death penalty is now unconstitutional under our state's constitution. "[I]f the doctrine of stare decisis has any efficacy under our case law, death penalty jurisprudence cries out for its application. Destabilizing the law in these cases has overwhelming consequences...."
 
 Zakrzewski v. State,
 

 717 So.2d 488
 
 , 496 n. 5 (Fla.1998) (Anstead, J., concurring), cert. denied,
 
 525 U.S. 1126
 
 ,
 
 119 S.Ct. 911
 
 ,
 
 142 L.Ed.2d 909
 
 (1999) ; accord
 
 State v. Waine,
 

 444 Md. 692
 
 , 702,
 
 122 A.3d 294
 
 (2015) (observing that "[w]here the [c]ourt has previously recognized a new [s]tate constitutional standard as fundamental to due process, deference to that precedent ensures the constancy upon which due process endures"). Indeed, in
 
 People v. Taylor,
 
 supra,
 
 9 N.Y.3d at 129
 
 ,
 
 848 N.Y.S.2d 554
 
 ,
 
 878 N.E.2d 969
 
 , Judge Robert S. Smith of the New York Court of Appeals explained in his concurring opinion his decision to join the majority in overturning a death sentence obtained under an unconstitutional death penalty procedure statute-despite dissenting three years before in
 
 People v. LaValle,
 

 3 N.Y.3d 88
 
 , 99,
 
 817 N.E.2d 341
 
 ,
 
 783 N.Y.S.2d 485
 
 (2004), in which the court had invalidated that statute.
 
 [4]
 
 Judge
 Smith explained that the "policies underlying
 the doctrine of stare decisis, which include stability, predictability, respect for our predecessors and the preservation of public confidence in the courts, are at their strongest where, as here, a court is asked to change its mind although nothing else of significance has changed. No one suggests that any development in the last three years, either in the law or the law's effect on the community, has changed the context in which
 
 LaValle
 
 was decided.
 
 Indeed, we are asked to revive the very same statute held invalid in LaValle-not a theoretically impossible step, but a radical one. So far as I can tell, we have never done such a thing, and the occasions on which other courts have done it are rare
 
 ...." (Citation omitted; emphasis added.)
 
 People v. Taylor,
 
 supra, at 156,
 
 848 N.Y.S.2d 554
 
 ,
 
 878 N.E.2d 969
 
 .
 

 Guided by these authorities, I am not convinced that any analytical shortcomings in
 
 Santiago
 
 surpass the significant stare decisis concerns that would accompany overruling that landmark decision. See, e.g.,
 
 Dickerson v. United States,
 

 530 U.S. 428
 
 , 443,
 
 120 S.Ct. 2326
 
 ,
 
 147 L.Ed.2d 405
 
 (2000) ( "[w]hether or not we would agree with [the] reasoning [of
 
 Miranda v. Arizona,
 

 384 U.S. 436
 
 ,
 
 86 S.Ct. 1602
 
 ,
 
 16 L.Ed.2d 694
 
 (1966) ] and its resulting rule, were we addressing the issue in the first instance, the principles of stare decisis weigh heavily against overruling it now"). Specifically, I have reviewed the opinions and briefs filed in
 
 Santiago,
 
 and determined that the majority in that case did not unreasonably read the record and the authorities
 when it concluded that: (1) the issues decided therein were raised by the parties, thus affording the state notice and an opportunity to brief them, had it elected to do so; and (2) the death penalty now is cruel and unusual punishment under our state's constitution in the wake of the death penalty's prospective repeal in No. 12-5 of the 2012 Public Acts. Although reasonable jurists certainly could-and most emphatically did-disagree about the merits of
 
 Santiago,
 
 I do not view the majority's decision in that case as so fundamentally flawed that it warrants overruling so soon after it was decided.
 
 [5]
 
 Thus, I emphasize my disagreement with the state's argument, in its supplemental brief and at oral argument before this court, that the recency of the court's decision in
 
 Santiago
 
 renders it an appropriate candidate for overruling, insofar as there has been minimal reliance on it to this point, and that the doctrine "carries less force when the court is asked to reconsider constitutional rulings because, unlike in statutory interpretation cases, the legislature lacks the ability to correct a judicial mistake." See, e.g.,
 
 State v. Salamon,
 
 supra,
 
 287 Conn. at 523
 
 ,
 
 949 A.2d 1092
 
 ("[p]ersons who engage in criminal misconduct, like persons who engage in tortious conduct, rarely if at all will ... give thought to the question of what law would be applied to govern their conduct if they were to be apprehended for their violations" [internal quotation marks omitted] );
 
 Conway v. Wilton,
 
 supra,
 
 238 Conn. at 661
 
 ,
 
 680 A.2d 242
 
 (force of stare decisis is "least compelling [when the ruling revisited] may not be reasonably supposed to have determined conduct of the
 litigants" [internal quotation marks omitted] ). I agree with Justice Palmer's observation in his opinion in the present case that the watershed nature of this court's decision in
 
 Santiago
 
 creates, in essence, a different kind of reliance concern beyond the arithmetically measurable reliance considered at oral argument before this court and emphasized by Justice Zarella in his dissenting opinion.
 
 [6]
 
 See L.
 Powe, "Intragenerational Constitutional Overruling,"
 
 89 Notre Dame L.Rev. 2093
 
 , 2104 (2014) (concluding that "reliance is rarely a factor in any decision about stare decisis in a case that does not involve economics" but observing that "[p]erhaps reliance in the noneconomic sphere internalizes ... the [c]ourt's view of the likely public reaction to a formal overruling"). That reliance concern is particularly heightened in the death penalty context, insofar as I can imagine nothing that would appear more shockingly arbitrary than for this court to invalidate the death penalty in
 
 Santiago
 
 and render a final judgment sparing the defendant in that case,
 
 [7]
 
 and then-with the substitution of a newly appointed justice-immediately overrule
 
 Santiago
 
 and hold that the defendant and his
 counterparts on death row could potentially face execution.
 
 [8]
 
 Putting aside the obvious equal protection consequences highlighted by Justice Palmer, this result, as demonstrated by very recent experience in one of our sister states, would at the very least strongly
 
 appear
 
 to stem solely from when the filing and scheduling of the defendants' appeals and the composition of the panels that heard their cases.
 
 [9]
 
 See
 
 State v. Petersen-
 

 Beard
 
 ,
 
 377 P.3d 1127
 
 , 1129,
 
 2016 WL 1612851
 
 , *1 (Kan.2016) (four to three decision overruling three separate four to three decisions issued by differently constituted panel on same day). This would be the nadir of the rule of law in the state of Connecticut.
 
 [10]
 
 Put
 differently, I find no substantive or procedural errors in
 
 Santiago
 
 whose magnitude justifies incurring the massive risk to our court's credibility as an institution that the state asks us to undertake.
 

 Accordingly, I join in the judgment of the court.