*State of Maryland v. James Leslie Adams-Bey, Jr.*, No. 105, September Term, 2015. Opinion by Barbera, C.J.

**CRIMINAL PROCEDURE – POSTCONVICTION – DISCRETION TO REOPEN POSTCONVICTION PROCEEDINGS –** Md. Code Ann., Crim. Proc. § 7-104 (2001, 2008 Repl. Vol.) vests only in the circuit court the discretion to decide whether it is in the interests of justice to grant a motion to reopen a postconviction proceeding. Nevertheless, § 7-109 authorizes the Court of Special Appeals to reverse a circuit court's decision in that regard, so long as the Court of Special Appeals reviews the circuit court's decision for an abuse of discretion. In the present case, the Court of Special Appeals properly exercised its statutory authority under § 7-109 in reversing the circuit court's order denying Respondent's motion to reopen and remanding to that court with instructions to grant the motion to reopen and thereafter grant Respondent a new trial.

**CRIMINAL LAW – POSTCONVICTION – ADVISORY ONLY INSTRUCTIONS –** Advisory only jury instructions are those that advise the jurors that they are the judges of the law and include, expressly or by implication, the presumption of innocence and the standard of proof. Such instructions constitute structural error that entitles a postconviction petitioner to a new trial. Consequently, a circuit court abuses its discretion in denying a petitioner's motion to reopen a postconviction proceeding if the jurors at the petitioner's trial were given advisory only instructions.

Circuit Court for Anne Arundel County
Criminal Case No. 02-K-10-002057
Postconviction Case No. 21,155
Argued: June 2, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 105

September Term, 2015

_____

STATE OF MARYLAND

v.

JAMES LESLIE ADAMS-BEY, JR.

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Battaglia, Lynne A.
　　　(Retired, Specially Assigned),

JJ.

_____

Opinion by Barbera, C.J.
Watts, J., joins in the judgment only.

_____

Filed:　August 25, 2016

The Uniform Postconviction Procedure Act ("UPPA") gives the circuit court the discretion to reopen a postconviction proceeding if doing so is "in the interests of justice." Md. Code Ann., Crim. Proc. § 7-104 (2001, 2008 Repl. Vol.).[1] We granted the State's petition for a writ of certiorari in this case to decide whether that same provision likewise grants the Court of Special Appeals the authority to afford the same relief.[2] We conclude easily that it does not. The answer to that particular question, however, does not resolve the matter at hand.

Rather, we must look to another aspect of the UPPA and, further, review once again advisory only instructions given at the time that they were mandated by Article 23 of the Maryland Declaration of Rights. Today, we put to an end finally any question surrounding such instructions and the effect that they have upon an individual's criminal trial. We reaffirm our holding in *State v. Waine*, 444 Md. 692 (2015), that structural error results from the giving of advisory only instructions that include expressly or by implication the presumption of innocence and the standard of proof. Such error, upon a proper petition for postconviction relief or motion to reopen a postconviction proceeding, entitles an individual to a new trial. We further hold that the Court of Special Appeals is statutorily authorized to review for an abuse of discretion a circuit court's denial of a motion to reopen

---

[1] All further statutory citations are references to the Criminal Procedure Article.

[2] The State's Question Presented asks:

> Where the legislature has mandated that a circuit court "may reopen a postconviction proceeding . . . if the court determines that the action is in the interests of justice," did the Court of Special Appeals err when it ordered the circuit court on remand to reopen Respondent's postconviction proceeding?

and may remand the matter to the circuit court with instruction to award appropriate relief if the circuit court abused that discretion.

I.

Advisory only instructions have a tortured history in this State. They are derived from Article 23, which reads: "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction." Based upon that constitutional mandate, we required judges under then-Maryland Rule 756b "[i]n every case in which instructions are given to the jury [to] instruct the jury that they are the judges of the law and that the court's instructions are advisory only."

In 1980, in *Stevenson v. State*, 289 Md. 167 (1980), we were asked to decide whether Article 23 violated the Due Process Clause of the Fourteenth Amendment. The Court held that Article 23 was constitutional on its face, reasoning that Article 23 limited the jurors' role as judges of the law only with respect to "disputes as to the substantive 'law of the crime.'" *Id.* at 180. Although the court's instructions on the law of the crime were advisory, the Court determined that all other instructions on the law were always binding upon the jury. *Id.* The following year, the Court in *Montgomery v. State*, 292 Md. 84, 90 (1981), subscribed to that standard by concluding that the trial court erred in advising the jury that *all* of the court's instructions were advisory. The *Montgomery* Court reasoned that, because "certain bedrock characteristics" of a criminal trial, such as the presumption of innocence and the standard of proof, "are not 'the law of the crime'" they are likewise "not advisory." *Id.* at 91.

2

We were confronted again with a postconviction case concerning advisory only instructions in *State v. Adams*, 406 Md. 240 (2008). We reaffirmed the constitutional standard articulated in *Stevenson* and *Montgomery*, determined that the standard was not "new law," and, consequently, concluded that a criminal defendant who had failed to object to the advisory only instruction at trial waived the right to assert it as a ground for postconviction relief. *Id.* at 256-61.

In 2012, we decided *Unger v. State*, 427 Md. 383 (2012). We held that our precedent was clearly wrong in concluding that the *Stevenson* interpretation of Article 23 was not a new constitutional standard. *Id.* at 417. As a result, we held that a defendant could challenge his pre-*Stevenson* conviction through a postconviction proceeding notwithstanding that the defendant did not object to advisory only jury instructions at trial. *Id.* at 391.

Just a few years later, we were asked in *Waine* to overrule *Unger* as a wrongful departure from principles of *stare decisis*, and to resurrect what was once the law under *Stevenson*, *Montgomery*, and *Adams*. 444 Md. at 699. We held that *Unger* was rightly decided and that *stare decisis* in fact required us to adhere to it. *Id.* at 700-02. Recognizing that the constitutional standard set forth in *Stevenson*—that the jury is the judge of the law of the crime and the judge's remaining instructions on the law are binding—was a change in the law that must be applied retroactively; we further held, pertinent to the case now before us, that a motion to reopen based on *Unger* satisfied the "interests of justice" standard under the UPPA. *Id.* at 702-03; *see Gray v. State*, 388 Md. 366, 382-83 n.7 (2005) (concluding that, "[w]hile it is within the trial court's discretion to decide when 'the

3

interests of justice' require reopening," a "change made in the law that should be applied retroactively" satisfies this standard). We held finally, informed by *Sullivan v. Louisiana*, 508 U.S. 275, 281-82 (1993), that an instruction that does not satisfy the new constitutional standard announced by *Stevenson* and *Montgomery* constitutes "structural error not susceptible to harmless error analysis." *Waine*, 444 Md. at 705.

From this, we can discern that a petitioner whose conviction resulted from a trial in which the jury was given advisory only instructions is entitled to have his postconviction proceedings reopened because such clearly erroneous instructions implicate the petitioner's federal constitutional right to due process. To deny reopening a postconviction proceeding to a petitioner whose conviction rests upon an error of constitutional dimension not subject to a harmless error analysis would necessarily be an abuse of discretion as "well removed from any center mark imagined by the reviewing court and beyond the fringe of what the court deems minimally acceptable." *Gray*, 388 Md. at 383 (internal quotation marks omitted).

## II.

In 1978, Respondent, James Leslie Adams-Bey, Jr., was convicted by a jury of first degree rape and related offenses in the Circuit Court for Anne Arundel County, and for those crimes he was sentenced to life plus ten years of incarceration. His convictions were affirmed by the Court of Special Appeals and this Court. *Adams v. State*, 43 Md. App. 528 (1979), *aff'd*, 289 Md. 221 (1981).

Respondent petitioned unsuccessfully for postconviction relief in 2010. On August 14, 2012, shortly after we had decided *Unger*, Respondent moved *pro se* to reopen his

4

postconviction proceeding on the ground that the jurors at his criminal trial were given advisory only instructions in violation of his constitutional right to due process of law. Respondent argued that those instructions were unconstitutional because the jury was not instructed to follow the court's explanation of the law and the court did not inform the jury of the binding nature of its instructions on the State's burden of proof or the presumption of innocence. The trial court instructed the jury, in relevant part, as follows:

> Madam Foreman, Ladies and Gentlemen of the jury, *at this point in the proceedings I am required to advise you concerning the law in this case.* ***I purposely use the term "advise" since in a criminal case, under Maryland law, you are the judges of both the law and the facts.*** However, I wish foremost to impress upon you that you should not reach any conclusion from anything that I have said or may say from my tone of voice or manner in saying it, that I have an opinion as to the guilt or innocence of the accused. This decision is yours to make, solely, based upon the facts derived from the competent testimony which has been presented for your consideration *as applied to the law as you find it to be. In this regard, should court and counsel appear to differ as to [the] law which is applicable, you should apply the law as you find it to be, not as you think it should be.* And during this process you are not privileged to make new law.
>
> . . . .
>
> In arriving at your verdict, *you're advised* that in this State an accused is entitled throughout the entire proceedings to the presumption of innocence. The burden constantly rests upon the State to convince you beyond a reasonable doubt and to a moral certainty of every fact material to the guilt of the accused, including every circumstance that enters into [the] grade or the degree of the crime charged.
>
> . . . .
>
> *You're further advised* that the burden is on the State to prove beyond a reasonable doubt not only that the offense was committed but also it was the defendant who is the person who committed these offenses.
>
> . . . .

5

. . . . And you must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him.

. . . .

To warrant a conviction in a criminal case, the charge must be proved beyond a reasonable doubt. If you, the jury, consider all the evidence and entertain a reasonable doubt as to the defendant's participation in the crime, you *should* acquit him. Thus, a defendant is entitled to an acquittal if the alibi evidence taken into consideration with all of the other evidence in the case, raises a reasonable doubt of guilt.

Gentlemen, that concludes the *advisory instructions*.

(Emphasis added).

The State argued in response that the court's instructions were not advisory because they did not permit the jury to disregard the law. The State asserted that the instructions given at Respondent's trial "materially differed from the *Unger* Court's instructions" because the court did not "instruct the jury that the instructions were not binding upon them."

The circuit court denied Respondent's motion without a hearing. In the court's written order, the court stated that, "[o]n November 5, 2012, D. Scott Whitney, Chief Attorney for the Office of the Public Defender delivered a copy of the transcript from the September 14 and 15, 1978 Jury Trial before Judge Childs." The circuit court then denied the motion, "having read and considered Defendant's Motion, Amendments to Motion to Reopen Post Conviction Proceedings, Response and *transcript*." (Emphasis added).

Respondent, now represented by the Office of the Public Defender, filed an application for leave to appeal. He argued that the circuit court abused its discretion by denying his motion to reopen because, similar to *Unger*, the "clear message conveyed to

6

the jury was that it was the ultimate arbiter of the law, despite what the judge said." The State reasserted that, unlike the instructions in *Unger*, "the court's instructions to Adams-Bey's jury presented it with a clear role," and therefore the instructions did not implicate Respondent's due process rights or warrant reopening his postconviction proceeding.

In an unreported two-page opinion, the Court of Special Appeals granted Respondent's application for leave to appeal and addressed the merits of his appeal. The Court, citing the pertinent portion of the trial court's instructions, recognized that the jurors in Respondent's trial received an advisory only instruction similar to that given in *Unger*. Noting Respondent's argument that the "circuit court had abused its discretion in denying his motion," and that *Waine* had clarified that an advisory only instruction was structural error that "mandated that the convictions be vacated," the Court "reverse[d] the circuit court's order denying Adams-Bey's motion to reopen his post-conviction proceeding" and remanded "to reopen Adams-Bey's post-conviction proceeding to consider his *Unger* claim and, thereafter, to vacate Adams-Bey's convictions and award him a new trial."

As noted at the outset of this opinion, we granted certiorari in this case to review the provisions of the UPPA that grant the circuit court and the Court of Special Appeals their respective authority to decide a motion to reopen in the first instance and to review that decision on appeal. Because the propriety of the circuit court's and the Court of Special Appeals's decisions depends upon an analysis of the instructions given at Respondent's trial, we must also clarify the state of the law on advisory only instructions and reaffirm the consequence of a structural error.

III.

7

The UPPA allows convicted persons to file a petition for post-conviction relief claiming that "the sentence or judgment was imposed in violation of the Constitution of the United States or the Constitution or laws of the State[.]" § 7-102(a)(1). The UPPA limits a petitioner to file only one petition. § 7-103. If a petitioner is denied postconviction relief, a petitioner may seek to reopen that postconviction proceeding by filing a motion with the court. *See Gray*, 388 Md. at 379-80; *see also* § 7-108 (distinguishing between a petition and a motion; a petitioner is entitled to counsel and a hearing when filing a petition but not when seeking to reopen). Pursuant to § 7-104, "[t]he court may reopen a postconviction proceeding that was previously concluded if the court determines that the action is in the interests of justice." We have interpreted § 7-104 to leave "within the court's discretion to decide, in the interests of justice, if a postconviction proceeding should be reopened." *Gray*, 388 Md. at 382.

The State has asked us to decide whether § 7-104 authorizes the Court of Special Appeals to order that a postconviction proceeding be reopened. The State argues that the "court" referenced in § 7-104 refers only to the circuit court and, consequently, the circuit court alone must decide whether granting a motion to reopen is in the interests of justice. According to the State, the Court of Special Appeals violated the dictates of § 7-104 by reviewing the circuit court's order *de novo*, deciding for itself that granting Respondent a new trial is in the interests of justice, and ordering the circuit court to afford Respondent postconviction relief.

We conclude that the plain language of § 7-104, read in the context of the UPPA in its entirety, makes clear that the General Assembly was referring to the circuit court. *See*

8

*Haile v. State*, 431 Md. 448, 470 (2013) (explaining the canon of statutory interpretation that requires courts to look at the statutory scheme and the context in which the statute belongs). Section 7-102 sets forth the rights of convicted persons under UPPA to bring a petition "under this title in the circuit court for the county in which the conviction took place." Section 7-103 limits a petitioner to file one petition within ten years. Although § 7-104 only uses the word "court" rather than "circuit court" in establishing the court's authority to reopen a postconviction proceeding, the statute logically refers and applies only to the circuit court. We have given § 7-104 that interpretation uniformly. *See Alston v. State*, 425 Md. 326, 333-38 (2012) (reviewing the circuit court's power to reopen under § 7-104 upon the State's motion for reconsideration); *Evans v. State*, 396 Md. 256, 277-78 (2006) (explaining that this Court reviews the circuit court's denial of a petitioner's motion to reopen a postconviction proceeding under § 7-104 for abuse of discretion); *Gray*, 388 Md. at 384 (concluding that the circuit court did not abuse its discretion to deny reopening under § 7-104). Section 7-104 is further unambiguous in the context of the statutory scheme as a whole because the UPPA specifically refers to the intermediate appellate court as the "Court of Special Appeals" in other sections. *See* §§ 7-107 to 7-109. It follows necessarily that the Court of Special Appeals derives no authority from § 7-104 to determine that granting a motion to reopen is in the interests of justice and to order the circuit court to grant that relief. That only the circuit court has the discretion to decide initially whether to grant or deny a motion to reopen does not resolve, however, the scope of the Court of Special Appeals's authority to review that decision on appeal.

Rather, we must look to § 7-109, which delineates the scope of the Court of Special

Appeals's jurisdiction once an application for leave to appeal is granted. Section 7-109(a) provides that, "after the court passes an order in accordance with this subtitle," the party aggrieved, either the petitioner or the State, "may apply to the Court of Special Appeals for leave to appeal the order." Section 7-109(b)(3) provides:

> (3) If the application for leave to appeal is granted:
> (i) the procedure for the appeal shall meet the requirements of the Maryland Rules; and
> (ii) the Court of Special Appeals may:
> 1. affirm, reverse, or modify the order appealed from; or
> 2. remand the case for further proceedings.

Notable for our purposes, the General Assembly in § 7-109 did not distinguish between the Court of Special Appeals's authority to review a petition for postconviction relief and a motion to reopen a postconviction proceeding. When the General Assembly draws no such distinction, neither should we. *See Bost v. State*, 406 Md. 341, 350 (2008) ("We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." (internal quotation marks omitted)). The plain language of § 7-109 permits the intermediate appellate court in either case to affirm, reverse, or modify the judgment of the circuit court or remand to that court for further proceedings. The Court of Special Appeals, as does this Court, reviews a circuit court's order in this regard for an abuse of discretion. *Gray*, 388 Md. at 383.

The State's argument that the Court of Special Appeals erred in reversing the circuit court's order, and requiring the court to grant Respondent relief, rises and falls with its determination that the Court of Special Appeals reviewed *de novo* the circuit court's denial

10

of Respondent's motion to reopen. The State's contention finds no support in the Court of Special Appeals's opinion and ignores the strong presumption that judges know the law and apply it correctly. *See Abdul-Maleek v. State*, 426 Md. 59, 74 (2012).

The Court of Special Appeals's opinion did not state expressly that it was reviewing the circuit court's decision either *de novo* or for an abuse of discretion. It does not follow necessarily, however, that the Court of Special Appeals ignored the standard of review to which it was bound and instead made its own interests of justice determination.

Our reading of the Court of Special Appeals's opinion leads to a different conclusion. The Court of Special Appeals recognized that appellate review of a motion to reopen is limited to an abuse of discretion because it framed Respondent's argument around that standard. Not once did the Court of Special Appeals use the phrase "*de novo*," nor did that court even opine that granting Respondent's motion was in the interests of justice. Rather, the Court of Special Appeals recited succinctly the law of advisory instructions, reviewed the instructions given at Respondent's trial, recognized that a structural error occurred, and determined consequently that the circuit court had abused its discretion in denying Respondent's motion to reopen. *See Kusi v. State*, 438 Md. 362, 385 (2014) ("When the trial court exhibits a clear failure to consider the proper legal standard in reaching a decision, such an action constitutes an abuse of discretion." (internal quotation marks omitted)); *Jenkins v. State*, 375 Md. 284, 296 (2003) (explaining that "the breadth of a trial judge's discretion to grant or deny a new trial is not fixed or immutable; rather it will expand or contract depending upon the nature of the factors being considered" (internal quotation marks omitted)).

11

The Court of Special Appeals's conclusion that the circuit court had abused its discretion, and its reversal of the judgment of that court on that basis, is consistent with the scope of its authority under § 7-109. Section 7-109 grants the Court of Special Appeals the authority to *reverse* or *remand* a circuit court's decision to deny a motion to reopen. That section therefore provides the Court of Special Appeals the authority to determine that the circuit court had abused its discretion and to afford the appropriate relief. If our intermediate appellate court was powerless to grant relief when a circuit court abused its discretion, then, as Respondent argues, the "'interests of justice standard' and the right to appellate review are meaningless." Section 7-109 permits such meaningful review, and we hold that the Court of Special Appeals acted within its statutory authority under § 7-109 in reviewing the circuit court's decision for an abuse of discretion.

IV.

We also hold that the Court of Special Appeals concluded correctly that the circuit court abused its discretion in denying Respondent's motion to reopen. That the circuit court did not hold a hearing on the motion to reopen or issue a written opinion explaining its reasons for the denial does not preclude an appellate court from reviewing the circuit court's decision. *See Gray*, 388 Md. at 384-85 (reviewing the circuit court's decision for an abuse of discretion and noting that the circuit court's brief statement that it considered the parties' arguments, along with the record, "was enough to inform the parties and the appellate courts of the reasons for [the court's] decision"). Like in *Gray*, we can discern the circuit court's rationale for denying Respondent's motion to reopen. The basis of Respondent's motion was his *Unger* claim, and the briefs in support of each party were

12

largely devoted to the question of whether the instructions given at Respondent's trial were sufficiently "advisory" to satisfy the "interests of justice" standard for reopening his postconviction proceeding.[3]   The circuit court considered both parties' arguments and "read and considered" the transcript of Respondent's jury trial, yet denied the motion nevertheless.   Having read the transcript of Respondent's trial, including the jury instructions, the circuit court concluded necessarily that those instructions were not advisory and therefore *Unger* did not warrant reopening his postconviction proceeding.

The parties dispute whether the instructions given at Respondent's trial were sufficiently "advisory" to run afoul of due process.   The State argues that the court's instructions were unlike those at issue in *Unger* and *Waine*, in which the juries were told that they were at liberty to disregard the courts' instructions.   In *Unger*, the trial court had stated the following:

> Under the Constitution of Maryland, the jury in a criminal case is the Judge of the Law as well as the facts. *Therefore, anything which I may say about the law, including any instructions which I may give you, is merely advisory and you are not in any way bound by it. You may feel free to reject my advice on the law and to arrive at your own independent conclusions.*
>
> You are to make the sole determination as to what the evidence is and what the law is. . . .

427 Md. at 392 (alteration in original) (emphasis added).   The trial court in *Waine* instructed similarly:

> Under the Constitution and laws of the State, the jury in a criminal case is the judge of both the law and the facts and *anything that I say to you about the law is advisory only. It is intended to help you, but you are at liberty to*

---

[3] In Respondent's motion to reopen, he also raised a claim of ineffective assistance of counsel, but did not seek relief on that basis in his application for leave to appeal.

*reject the Court's advice on the law and to arrive at your own independent conclusion on it, if you desire to do so.*

444 Md. at 697 (emphasis added). According to the State, the court's instructions at Respondent's trial pass constitutional muster because they did not include such advice.

We conclude that the jurors at Respondent's trial received what were unquestionably advisory only instructions and, as a consequence of that structural error, Respondent is entitled to a new trial. The new constitutional standard announced in *Stevenson* is that the jury is the judge of the law of the crime and the judge's remaining instructions on the law are binding. 289 Md. at 180. Because bedrock constitutional principles such as the presumption of innocence and the standard of proof "are not 'the law of the crime,'" the jury *must be told* that. *Montgomery*, 292 Md. at 91. Consequently, the latter portion of the *Stevenson* rule—that the jury is bound by the court's instructions on the law other than the substantive law of the crime—is necessary to render constitutional an advisory only instruction. Lest there be any doubt, a jury instruction advising the jury that it is the judge of the law is an advisory only instruction. Such an instruction constitutes structural error if the court does not also inform the jury that it is bound by the presumption of innocence and the beyond a reasonable doubt standard. *See Robertson v. State*, 295 Md. 688, 689 (1983) (per curiam) (concluding that the defendant "was entitled to an instruction that the court's comments on the burden of proof were not merely advisory but were binding upon the jury" and that the "[f]ailure to give the requested instruction constituted reversible error"); *Montgomery*, 292 Md. at 91 (concluding that the trial judge erred in advising the jury that all of his instructions were advisory because "certain bedrock

14

characteristics" such as the presumption of innocence and standard of proof "are not 'the

law of the crime'" and "are not advisory").

Because the court's instructions to the jury at Respondent's trial did not follow the

standard set forth by *Stevenson* and *Montgomery*, those instructions were structurally

erroneous. The trial court's instructions were framed by the concept that the jury was

merely being "advised" because the jurors "are the judges of both the law and the facts."

The jurors were granted permission to apply the law as they found it to be, and the trial

court repeated the advisory nature of its instructions when it instructed on the presumption

of innocence and the State's burden of proof beyond a reasonable doubt. At the close of

the court's instructions, the trial court stated: "Gentlemen, that concludes the *advisory*

*instructions*." (Emphasis added). The court made no distinction between the "law of the

crime" and the court's remaining instructions on the law, upon which the jury was bound.[4]

And, in particular, the court declined to inform the jury of the binding nature of the court's

instructions on matters of bedrock constitutional law.

The State's reliance upon the instructions given in *Unger* and *Waine* is misplaced.

Although those juries were told expressly that they could reject all of the courts' advice,

which might have made those advisory instructions more *overtly* unconstitutional, that

language was not dispositive. Rather, it was the courts' admonishment that the jury was

---

[4] The State concedes that there was no dispute as to the law of the crime in this case. As a result, pursuant to our decision in *Montgomery*, the jury should not have been instructed that *any* of the court's instructions were advisory, much less those instructions on constitutional principles. *See Montgomery*, 292 Md. at 89 (concluding that the trial court should not have instructed that its instructions were advisory because there was no substantive dispute as to the law of the crime).

15

the judge of the law and the failure to instruct that the jury was bound by the courts' instructions on the law other than the substantive law of the crime, if there happened to be such a dispute. *See Unger*, 427 Md. at 388 n.2 ("[A] judge's instructions to the jury concerning the burden of proof, the presumption of innocence, proof beyond a reasonable doubt, and other matters implicating federal constitutional requirements, must be binding upon the jury.").

In the present case, it matters not that the court's instructions did not include the precise language used in the trials of Mr. Unger and Mr. Waine. It is enough that the jurors were told that they were the judges of the law and should apply the law as they found it to be, and they were not instructed that they were bound by the court's instructions regarding the presumption of innocence and the standard of proof beyond a reasonable doubt. *See Jenkins v. Hutchinson*, 221 F.3d 679, 681 (4th Cir. 2000) (concluding that the court gave advisory only instructions at the defendant's trial when the court stated that "[y]ou will note that I use the word 'advisory' and I do so intentionally in that in this case, as is true in all criminal cases in Maryland, *it is the function of the jury to be the sole judges of both the facts and the law*"). It follows necessarily that the court's instructions constituted structural error and rendered Respondent's trial fundamentally unfair.

We similarly reject the State's contention that "[i]t can hardly be said that these instructions 'g[a]ve the jury permission to disregard any or all of the court's instructions, including those bedrock due process instructions on the presumption of innocence and the State's burden of proving the defendant's guilt beyond a reasonable doubt.'" (Alteration in original) (quoting *Waine*, 444 Md. at 704). That argument reflects an attempt to resurrect

16

the "reasonable likelihood" argument that we rejected expressly in *Waine*. In *Waine*, the State had urged us to adopt a case-by-case analysis for analyzing advisory only jury instructions, in which the postconviction court would decide whether there was a "reasonable likelihood" that the jurors understood that they could disregard the court's instructions on the standard of proof beyond a reasonable doubt. 444 Md. at 703. We declined that invitation because the reasonable likelihood test applies to review of ambiguous jury instructions. *Id.* at 704. In so declining, we recognized that advisory only jury instructions are not ambiguous: "rather, such instructions are clear, but erroneous." *Id.* In comparing the instructions at Respondent's trial with those at issue in *Unger* and *Waine* and then suggesting that Respondent's jurors were not similarly affected, the State is arguing essentially that the jurors at Respondent's trial did not understand the judge's instructions to allow them to disregard matters of constitutional significance. Whether that is so, in light of *Waine*, is now irrelevant.

We emphasize that the constitutional infirmity at issue here is of the sort that "will always invalidate the conviction." *Sullivan*, 508 U.S. at 279. In the face of an instruction that "create[d] the risk that the jury will convict the defendant even if the State has not met its required burden of proof," *Arizona v. Fulminante*, 499 U.S. 279, 291 (1991) (White, J., dissenting), Respondent's conviction is essentially a nullity, *see Sullivan*, 508 U.S. at 280 (concluding that "there has been no jury verdict within the meaning of the Sixth Amendment" when the jurors did not receive a proper reasonable doubt instruction). Consequently, there would be no purpose to remand to the circuit court to reconsider Respondent's motion in light of *Waine*, as suggested by the State. The error in the trial

17

court's instructions was apparent within the four corners of the transcript and there is no further fact finding that needs to be conducted to decide the merits of Respondent's *Unger* claim. The Court of Special Appeals did not err in recognizing the structural error and ordering the circuit court to grant the appropriate relief. Having confirmed that the trial court gave an advisory instruction, Respondent is necessarily entitled to a new trial, and it would be an abuse of discretion to deny Respondent relief in light of *Waine*. *See Rose v. Clark*, 478 U.S. 570, 577-78 (1986) (noting that, when a defendant is deprived of those constitutional protections that constitute structural error, "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair" (citation omitted)).

It also bears emphasis, moving forward, that trial courts at the time of Respondent's trial were *required* to give an advisory instruction under both Article 23 and Maryland Rule 757b.[5] It is virtually certain that a court during that era would have given such an instruction and not effectively nullify it immediately thereafter by informing the jury of the binding nature of its instructions on constitutional matters. *Cf. Schowgurow v. State*, 240 Md. 121, 125-26 (1965) (noting that "[t]he conclusion is inescapable" that the jury at the petitioner's trial was required to declare a belief in God because Article 36, at that time, imposed such a requirement and there exists a "strong presumption" that judges perform their duties). Only in such an extraordinary case—if ever there might be one—could it perhaps be a proper exercise of discretion to deny a motion to reopen postconviction

---

[5] We noted in *Waine*, 444 Md. at 701 n.3, that Rule 756b was renumbered as Rule 757b in 1977, but the Rule did not change in substance.

proceedings on an *Unger* claim.

This case is not unlike those instances that have come before us where a change in the law on constitutional matters invalidated uniformly the sentences or convictions derived from those now-unconstitutional practices. *Bartholomey v. State*, 267 Md. 175 (1972), is one such example. That case came to us on remand from the Supreme Court after its decision in *Furman v. Georgia*, 408 U.S. 238, 239-40 (1972) (per curiam), which held that statutes that permitted the imposition of the death penalty on a discretionary basis were unconstitutional under the Eighth and Fourteenth Amendments. We noted that the Supreme Court had summarily vacated the death sentences in the consolidated cases before it and the 120 other cases that were still pending on the Court's docket. *Bartholomey*, 267 Md. at 182-83. We therefore determined that the Court's decision in *Furman* "invalidate[d] *all* death penalties imposed pursuant to discretionary statutes . . . without regard to the nature of the offense, the particular circumstances under which the crime was committed, or the particular procedure followed in imposing the death sentence." *Id.* at 184. As a consequence, Mr. Bartholomey's sentence was likewise invalidated—without further discussion on the merits—and we remanded to the sentencing court with instruction to impose a new sentence. *Id.* at 185-86.

The same result inures here. Respondent's trial was rendered constitutionally defective by virtue of the advisory only instructions provided to his jury and, accordingly, he is entitled to a new trial. The circuit court abused its discretion by determining that Respondent's motion to reopen did not satisfy the interests of justice standard. We therefore affirm the judgment of the Court of Special Appeals.

19

**JUDGMENT OF THE COURT OF
SPECIAL APPEALS AFFIRMED.
COSTS IN THIS COURT AND THE
COURT OF SPECIAL APPEALS TO
BE PAID BY ANNE ARUNDEL
COUNTY.**

Judge Watts joins the judgment only and writes separately as follows.

Respectfully, I join the judgment only, and write briefly to explain my reasons for doing so. Consistent with my dissent in State v. Waine, 444 Md. 692, 708, 122 A.3d 294, 303 (2015) (Watts, J., dissenting), in my view, the decision in Unger v. State, 427 Md. 383, 411, 48 A.3d 242, 258 (2012), was clearly wrong and was a repackaging of the dissent in State v. Adams, 406 Md. 240, 312-40, 958 A.2d 295, 339-56 (2008) (Eldridge, J., dissenting). From my perspective, Unger represented an abandonment of the principle of *stare decisis*; and, as this Court determined in Adams, 406 Md. at 256, 958 A.2d at 305, the interpretation of Article 23 (Trial by Jury) of the Maryland Declaration of Rights in Stevenson v. State, 289 Md. 167, 178, 423 A.2d 558, 564 (1980) did not set forth a new constitutional standard.

That said, to be sure, the law, as developed in Unger and Waine, is indisputably that, where "advisory instructions" were given at a trial that occurred before this Court issued Stevenson, a petitioner is entitled to postconviction relief in the form of the reopening of the postconviction proceeding and the award of a new trial.[1] As the Majority indicates, instructions are "advisory" where a trial court instructs the jurors that they are the judges of the law, and the trial court fails to instruct the jury that the trial court's instructions on matters other than the law of the crime, such as the State's burden of proof and the

---

[1]Specifically, this Court's holding in Unger, 427 Md. at 391, 48 A.3d at 246-47, was that "failure to object to advisory only jury instructions in criminal trials prior to *Stevenson* will not constitute a waiver." In other words, under Unger, where a trial occurred before this Court issued Stevenson, the defendant's failure to object to "advisory instructions" does not bar relief. In Unger, this Court did not address the effect of a defendant's failure to object to "advisory instructions" where a trial occurred after this Court issued Stevenson.

presumption of innocence, are binding—*i.e.*, not advisory. Thus, for example, in my view, where a trial court instructs a jury that the trial court's instructions on the law of the crime are "advisory only," but that all of the trial court's other instructions are binding, such instructions would not be deemed "advisory instructions" of the type that Unger proscribes.

Determining that instructions are indeed "advisory instructions" requires more than a determination that the instructions are "similar" to those in Unger. Here, the Court of Special Appeals was required to go further than simply stating that "the trial court at Adams-Bey's 1978 trial gave a similar 'advisory only' jury instruction[.]"[2] I do not disagree that Md. Code Ann., Crim. Proc. ("CP") § 7-109[3] permits an appellate court to reverse and remand with instructions that a circuit court reopen a postconviction proceeding and award a new trial. To reverse and remand to the circuit court for reopening and a new trial under CP § 7-109, however, an appellate court is required to determine that the jury instructions were indeed "advisory instructions."

Similarly, a trial court that is faced with a petition to reopen a postconviction proceeding based on an Unger claim must evaluate whether the jury instructions were

---

[2]In a footnote that immediately followed this sentence, the Court of Special Appeals observed that, at Adams-Bey's trial, the trial court instructed the jury, in pertinent part, as follows:

> Madam Foreman, Ladies and Gentlemen of the jury, at this point in the proceedings I am required to advise you concerning the law in this case. I purposely use the term "advise" since in a criminal case, under Maryland law, you are the judges of both the law and the facts.

[3]CP § 7-109(a), part of the Uniform Postconviction Procedure Act, states: "Within 30 days after the court passes an order in accordance with this subtitle, a person aggrieved by the order, including the Attorney General and a State's Attorney, may apply to the Court of Special Appeals for leave to appeal the order."

- 2 -

indeed "advisory instructions," as defined by <u>Unger</u>. The Majority's use of the term "necessarily," Maj. Slip Op. at 16, does not mean that a trial court should automatically grant a petition to reopen a postconviction proceeding based on an <u>Unger</u> claim—or, for that matter, grant such a petition because the jury instructions were "similar" to those that the trial court gave in <u>Unger</u>. Instead, a trial court, when faced with a petition to reopen a postconviction proceeding—and the Court of Special Appeals, when faced with an application for leave to appeal from the denial of a petition to reopen a postconviction proceeding—must determine whether the jury was instructed that the trial court's instructions on matters other than the law of the crime, such as the State's burden of proof and the presumption of innocence, were "advisory." Here, however, in its unreported opinion, the Court of Special Appeals did not make such a determination. The Majority affirms the judgment of the Court of Special Appeals only after analyzing the instant jury instructions and determining that they were indeed "advisory." <u>See</u> Maj. Slip Op. at 16. From my perspective, though, although the Majority determines that the instructions in this case were "advisory instructions," the Majority opinion is not clear that, going forward, trial and appellate courts must engage in a similar determination that alleged advisory instructions are indeed "advisory instructions" before granting relief.

What is clear is that, when confronted with <u>Unger</u> claims, trial courts and the Court of Special Appeals must review the jury instructions and determine whether they were indeed "advisory instructions" that <u>Unger</u> proscribes. The mere allegation that instructions were "advisory instructions," or that the instructions were similar to those that the trial court gave in <u>Unger</u>, is not sufficient to establish structural error.

- 3 -

For the above reasons, respectfully, I join the judgment only.